Glen H. ROCKER and Theresa Rocker,
Plaintiffs-Appellants,

v.

USAA CASUALTY INSURANCE COMPANY,
General Casualty Company of Wisconsin,
and Cornell Cousins,
Defendants-Respondents.

Supreme Court

*No. 2004AP356. Oral argument November 16, 2005.
—Decided March 30, 2006.*

2006 WI 26

(Also reported in 711 N.W.2d 634.)

For the plaintiffs-appellants there were briefs by *Virginia M. Antoine, Timothy S. Trecek,* and *Habush Habush & Rottier S.C.,* Milwaukee, and oral argument by *Timothy S. Trecek.*

For the defendant-respondent USAA Casualty Insurance Company, there was a brief by *Frederick J. Smith* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Frederick J. Smith.*

For the defendant-respondent General Casualty Company of Wisconsin, there was a brief by *Jacqueline E. Frakes* and *Eiche & Frakes, S.C.,* Milwaukee, and oral argument by *Jacqueline E. Frakes.*

¶ 1. JON P. WILCOX, J.   This case is before the court on certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (2003–04).[1] The appellants, Glen H. Rocker and Theresa Rocker (the Rockers) appealed an order of the Circuit Court for Milwaukee County, Clare L. Fiorenza, Judge, wherein the court dismissed all claims and causes of action with prejudice against defendant USAA Casualty Insurance Company (USAA) and dismissed defendant General Casualty Company of Wisconsin (General Casualty).

¶ 2.  Glen Rocker (Rocker) was injured while working at an Octopus Car Wash (Octopus)[2] when a coemployee, Cornell Cousins (Cousins), accidentally drove a customer's motor vehicle into him. General Casualty insured Octopus, while USAA insured the customer, Andrew Paretti (Paretti). The Rockers brought suit against General Casualty, USAA, and Cousins. General Casualty filed a motion for declaratory and summary judgment[3] arguing that its comprehensive insurance policy[4] did not cover Rocker's inju-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[2] The car wash at issue is referred to as both "Octopus Car Wash" and "University Car Wash" by the parties; however, there is no dispute that both names refer to the same entity. For consistency, we will use the name Octopus Car Wash (Octopus).

[3] General Casualty's motion was initially framed as a motion for declaratory judgment. However, General Casualty entitled its supporting brief as one for summary judgment. In its order granting General Casualty's motion, the circuit court also characterized it as one for declaratory and summary judgment. We will follow the characterization of the circuit court.

[4] General Casualty's comprehensive insurance policy included two pertinent coverage parts:  (1) commercial general liability coverage; and (2) commercial umbrella coverage.

ries. After General Casualty's motion was granted and the Rockers' claims against General Casualty were dismissed with prejudice, USAA brought its own motion for declaratory judgment, requesting that the circuit court declare that USAA's maximum amount of coverage with respect to Cousins was the $25,000 minimum amount required under the Wisconsin financial responsibility law. The circuit court also granted USAA's motion, upon payment of its $25,000 policy limit to the court. After the court issued its final order on December 16, 2003, the Rockers appealed.

¶ 3. The court of appeals certified the following questions: (1) Does a full-service car wash fall within the definition of a "motor vehicle handler" found in Wis. Stat. § 632.32(2)(b); (2) Does the holding in *Heritage Mutual Insurance Co. v. Wilber*, 2001 WI App 247, 248 Wis. 2d 111, 635 N.W.2d 631—that a commercial general liability policy providing an endorsement for non-owned automobile liability falls within Wis. Stat. § 632.32(1)'s scope provision—retain its vitality, since § 632.32 has been amended, and significantly altered, and now requires, inter alia, uninsured motorist coverage, medical payments and coverage, and prohibits exclusion of coverages for relatives of the insured?; (3) Was *Gorzalski v. Frankenmuth Mutual Insurance Co.*, 145 Wis. 2d 794, 429 N.W.2d 537 (Ct. App. 1988), decided correctly when it failed to enforce the requirement of coverage for a motor vehicle handler as mandated by Wis. Stat. § 632.32(6)(a)?

¶ 4. We conclude the following: (1) A full-service car wash is a motor vehicle handler under § 632.32(2)(b) because it is a "service station"; (2) The holding of *Heritage Mutual* retains its validity, and the requirements of § 632.32(6)(a) apply to commercial general liability policies and commercial umbrella policies that

provide automobile liability coverage; (3) *Gorzalski* was incorrectly decided, and we overrule its holding as it pertains to coemployee exclusions.

¶ 5.   As such, the final order issued by the circuit court on December 16, 2003, is reversed and the cause is remanded for further proceedings consistent with this opinion.

I

¶ 6.   On February 3, 1999, Paretti drove his 1999 Mercury Marquis to an Octopus located in Milwaukee. Paretti had been a customer for many years, and per the standard procedure, he proceeded to an overhead door area and waited for an attendant. Paretti ordered a standard wash, left the car running and in park, and went inside an enclosed area to pay the bill and receive a claim ticket. An employee then drove the car onto an automatic conveyor for washing. At the end of the conveyor, Cousins got into the car to drive it off the conveyor and into the drying area. While driving the vehicle off the conveyor, Cousins allegedly stepped too hard on the accelerator, causing the vehicle to lunge forward, hit the wall of the car wash and strike Rocker, his coworker, who was standing in the drying area. Rocker was seriously injured by the accident.

¶ 7.   Along with his wife, Rocker filed a lawsuit against General Casualty,[5] USAA, and Cousins on January 31, 2002.[6] General Casualty filed a motion for

---

[5] General Casualty is both the liability insurer and the worker's compensation insurer for Octopus. General Casualty's role as the worker's compensation insurer is not at issue for purposes of this opinion.

[6] Rocker also filed suit against Ford Motor Company, the manufacturer of Paretti's vehicle, and Heiser Lincoln Mercury,

declaratory and summary judgment on May 15, 2002, on the grounds that the comprehensive policy it issued to Octopus did not provide liability coverage to Cousins for the injuries sustained by Rocker as a result of the alleged negligent acts of Cousins.

¶ 8. General Casualty had issued a comprehensive insurance policy to Octopus prior to the accident. This policy included commercial general liability coverage with a limit of $500,000 and commercial umbrella coverage with a limit of $2,000,000. The commercial general liability coverage provisions of the policy read in pertinent part as follows:

SECTION I – COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreements

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

2. Exclusions

This insurance does not apply to:

. . . .

    e. Employer's Liability

"Bodily injury" to:

    (1) An "employee" of the insured arising out of and in the course of:

        (a) Employment by the insured; or

        (b) Performing duties related to the conduct of the insured's business . . . .

---

Inc., the seller of Paretti's vehicle. Those entities were later dismissed by stipulation and order filed September 20, 2003.

g.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

. . . .

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured[.]

SECTION II – WHO IS AN INSURED

. . . .

2. Each of the following is also an insured:

a.  Your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1)  "Bodily injury" or "personal injury":

(a)  To you . . . or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business . . . .

¶ 9.  Following the main provisions of the commercial general liability coverage, the policy contains an endorsement entitled: "OPERATION OF CUSTOMERS AUTOS ON PARTICULAR PREMISES" which provides as follows:

A.  Exclusion g. of Paragraph 2., Exclusions of Cover-

302

age A. – Bodily Injury and Property Damage Liability (Section I – Coverages) does not apply to any "customer's auto" while on or next to those premises you own, rent or control that are used for any of the following businesses:

1. Auto Repair or Service Shops;

2. Car Washes;

3. Gasoline Stations;

4. Tire Dealers;

5. Automobile Quick Lubrication Services.

¶ 10. General Casualty also issued commercial umbrella coverage to Octopus as part of its comprehensive insurance policy. This portion of the policy provides bodily injury coverage for an "insured" defined in the policy as:

Your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1)    "Bodily injury" or "personal injury":

(a)    To you . . . or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business[.]

¶ 11. The commercial umbrella coverage also contains an automobile liability endorsement which modifies the coverage as follows:

Except to the extent coverage is available to you or the insured in the "underlying insurance," this insurance shall not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the ownership, maintenance, use or entrustment to

others of any "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

¶ 12. After briefing and a hearing held before Judge Thomas P. Donegan, General Casualty's declaratory and summary judgment motion was granted on July 24, 2002, and the Rockers' claims against General Casualty were dismissed with prejudice.[7] The circuit court concluded that General Casualty's policy was unambiguous and excludes from the definition of insured an employee who injures another employee during the course of their employment. Furthermore, the court recognized the *Gorzalski* decision, 145 Wis. 2d 794, as controlling precedent.

¶ 13. The Rockers, Cousins, and USAA each sought appellate review. However, because General Casualty remained in the case as worker's compensation insurer, the appeals were not considered to be of right, and the court of appeals denied appellate review September 16, 2002. The Rockers also sought review in this court, but we denied the petition.

¶ 14. For its part, USAA had issued two policies to Paretti: a personal auto policy with limits of $300,000/ $500,000 and a personal umbrella policy with a limit of $2,000,000. The "INSURING AGREEMENT" of the personal auto policy stated in part: "We will pay damages for BI [bodily injury] or PD [property damage] for which any covered person becomes legally responsible because of an auto accident." The term "covered person" is defined to include "[a]ny person using your covered auto." The term "your covered auto" is defined to

---

[7] However, General Casualty remained an interested party because of payments made to Rocker pursuant to a worker's compensation policy issued to Octopus.

include "[a]ny vehicle shown in the Declarations." Paretti's Mercury automobile that Cousins operated is shown in the Declarations.

¶ 15. The USAA personal auto policy further contains the following exclusion regarding an "auto business":

> A. We do not provide Liability Coverage for any person:
>
> . . . .
>
>> 6. While employed or otherwise engaged in the auto business. This exclusion does not apply to the ownership, maintenance or use of:
>>
>> a. your covered auto by any person, if there is no other valid and collectible insurance, whether such insurance is primary, excess or contingent, at limits equal to or greater than the limits of liability required by the Wisconsin financial responsibility law, available to respond for damages for which that person is legally responsible. In this event, we will provide liability coverage for that person up to the limits of liability required by the Wisconsin financial responsibility law.

¶ 16. As defined in the policy, the term "auto business" means "the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, or storing vehicles."

¶ 17. Paretti also had a personal umbrella policy through USAA. Under an endorsement entitled "WISCONSIN SPECIAL PROVISIONS" the "LIABILITY COVERAGE" of the umbrella policy provided the following:

> We will pay for damages an insured becomes legally obligated to pay in excess of the retained limit. We will

also pay for damages arising out of the ownership, maintenance, use, loading or unloading of a motor vehicle below the retained limit, but only up to the amount required by the Wisconsin Financial Responsibility law and only in the event that there is no other valid collectible insurance with at least those limits available. . . .

¶ 18. Additionally, the endorsement changed the definition of an "insured" to exclude "[s]ales agencies, repair shops, service stations, storage garages or public parking lots, their owners, agents or employees unless there is no other valid and collectible insurance and then only up to the limits required by the Wisconsin Financial Responsibility law."

¶ 19. Due to judicial rotation, Judge Clare L. Fiorenza took over Judge Donegan's calendar on January 13, 2003. USAA filed a motion for declaratory judgment on April 10, 2003, asking the circuit court to declare Octopus a "motor vehicle handler," and as a result, § 632.32(5)(b) entitled USAA to limit its liability with regard to coverage provided to Cousins to the $25,000 amount under Wisconsin's financial responsibility law. USAA also reserved its right to move for summary judgment dismissing all claims against it should the court of appeals reverse the circuit court's July 24, 2002, order.

¶ 20. After briefing and a hearing, the circuit court entered an order on July 3, 2003, granting USAA's motion for declaratory judgment, finding that Octopus was a "service station" under § 632.32(2)(b)3., and therefore a "motor vehicle handler." The court further determined that USAA's policies of insurance issued to Paretti permitted a reduction of USAA's coverage of Cousins to $25,000.

306

¶ 21. On September 12, 2003, on motion of USAA, the court issued an order declaring that USAA would be dismissed from the case upon payment of its $25,000 policy limit.

¶ 22. On December 16, 2003, the circuit court entered a final order dismissing USAA and General Casualty as worker's compensation insurer. It is from this final order that the Rockers appealed. After briefing and oral argument in the court of appeals, this matter was certified to this court.

## II

¶ 23. In this case we are called upon to determine whether Octopus is a "motor vehicle handler" under Wis. Stat. § 632.32(2)(b) and determine whether Wis. Stat. § 632.32(6)(a) applies to commercial general liability policies and commercial umbrella policies that provide automobile liability coverage. "Statutory interpretation is a question of law that we review de novo." *State v. Stenklyft,* 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. "[O]ur goal in interpreting statutory provisions is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute." *Id.* (citing *State ex rel. Kalal v. Dane County Cir. Ct.,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110). "To this end, absent ambiguity in a statute, we do not resort to extrinsic aids of interpretation and instead apply the plain meaning of the words of a statute in light of its textually manifest scope, context, and purpose." *Id.* (citing *Kalal,* 271 Wis. 2d 633, ¶¶ 45–46).

¶ 24. Additionally, "we have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we

ordinarily stop the inquiry.'" *Kalal,* 271 Wis. 2d 633, ¶ 45 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citations omitted).

## III

¶ 25. We first determine whether Octopus is a "motor vehicle handler" under Wis. Stat. § 632.32(2)(b). The Rockers, USAA, and Cousins argue that if Octopus is a motor vehicle handler, then we must conclude that the coemployee coverage limitations in General Casualty's comprehensive insurance policy are invalid under § 632.32(6)(a),[8] and that General Casualty must provide coverage to Cousins to the full extent of the policy limits. Furthermore, if Octopus is a motor vehicle handler, then USAA may limit the coverage provided to Cousins, pursuant to § 632.32(5)(b).[9]

¶ 26. Alternatively, the Rockers argue, if the car wash is not a motor vehicle handler, then Wis. Stat.

---

[8] Wisconsin Stat. § 632.32(6)(a) provides: "No policy issued to a motor vehicle handler may exclude coverage upon any of its officers, agents or employees when any of them are using motor vehicles owned by customers doing business with the motor vehicle handler."

[9] Wisconsin Stat. § 632.32(5)(b) provides:

If the policy is issued to anyone other than a motor vehicle handler, it may limit the coverage afforded to a motor vehicle handler or its officers, agents or employees to the limits under s. 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

308

§ 632.32(6)(a) does not apply, and the coemployee coverage limitations in General Casualty's policy are enforceable. Accordingly, General Casualty would not be required to provide coverage to Cousins. Furthermore, USAA cannot then limit the coverage provided to Cousins to $25,000, and instead USAA must provide coverage to Cousins to the full extent of the policy limits in the policies issued to Paretti.

¶ 27.   We begin our analysis, as we must, with the language of the statute. Wisconsin Stat. § 632.32(2)(b) defines the term "motor vehicle handler" as follows:

> "Motor vehicle handler" means any of the following:
>
> 1.  A motor vehicle dealer, as defined in s. 218.0101(23)(a).
>
> 2. A lessor, as defined in s. 344.51(1g)(a), or a rental company, as defined in s. 344.51(1g)(c).
>
> 3. A repair shop, service station, storage garage or public parking place.

¶ 28.   The Rockers, USAA, and Cousins contend that the circuit court correctly held that Octopus is a service station. General Casualty disputes this conclusion. We agree with the circuit court and conclude that based on the plain meaning of the phrase, a full-service car wash such as Octopus, where vehicles are serviced and driven by employees, is a service station and therefore a statutory motor vehicle handler.

¶ 29.   General Casualty principally contends that the term "service station" should be interpreted according to its common usage as of 1975 when the term was initially introduced in the formulation of Wis. Stat.

§ 632.32 (1975–76).[10] In other words, General Casualty asserts that a service station was generally recognized as a gasoline or filling station, where an attendant would fill up the gas tank, check the oil, check the tires, and perform other similar services while the customer waited in the automobile. *See Gullickson v. Western Cas. & Sur. Co.,* 17 Wis. 2d 220, 223–24, 116 N.W.2d 121 (1962) (describing the activities of a service station as the term was understood in 1962). Despite this historical understanding of a service station, we believe that such an interpretation is unreasonably restrictive given the plain meaning of the term "service station" and the broad construction generally applied to § 632.32. *See Home Ins. Co. v. Phillips,* 175 Wis. 2d 104, 111, 499 N.W.2d 193 (Ct. App. 1993) ("Section 632.32 is a remedial statute, and must be construed broadly so as to increase rather than to limit coverage.").

¶ 30. The term "service station," as it appears in subparagraph 3 of Wis. Stat. § 632.32(2)(b), is not modified by any other word. It simply describes one type of motor vehicle handler.

¶ 31. Here, Octopus is a "full-service" car wash that provides numerous services to their customers' motor vehicles. As a routine part of its business, Octopus employees are required to operate their customers' motor vehicles in order to provide the various services purchased. According to Jeffrey Dropik,[11] the current

---

[10] At that time, the legislature defined an "automobile handler" as "an automobile sales agency, repair shop, service station, storage garage or public parking place." Wis. Stat. § 632.32(2)(a) (1975–76).

[11] General Casualty argues that the deposition of Jeffrey Dropik and the affidavit of Andrew Paretti should not be considered because this evidence was submitted to the circuit court in USAA's declaratory judgment motion after General

owner/operator of Octopus and the manager at the time of the accident, the car wash routinely sells the following services: washing, vacuuming, waxing, tire dressing, window cleaning, towel drying, and additional detailing. Octopus also provides the service of having an employee drive the customer's car on and off the conveyor belt and to the checkout area.

¶ 32. Moreover, the context in which the term "motor vehicle handler" is used in Wis. Stat. § 632.32 supports the broad construction advocated by the Rockers, USAA, and Cousins. For example, § 632.32(6)(a) suggests that a statutory "motor vehicle handler" is an entity that regularly handles its customers' motor vehicles. Section 632.32(6)(a) reads as follows: "No policy issued to a motor vehicle handler may exclude coverage upon any of its officers, agents or employees when any of them are *using motor vehicles owned by customers doing business with the motor vehicle handler.*" (Emphasis added.) As part of its service to its customers, the employees of Octopus routinely "use" each customer's motor vehicle. Under the definition of Wis. Stat. § 632.32(2)(c), "using" includes "driving, operating, manipulating, riding in and any other use." It is irrelevant that the employees operate the vehicles for a short time frame or drive the vehicle a short distance. Octopus's operation of motor vehicles is very similar to other recognized motor vehicle handlers under Wis. Stat. § 632.32(2)(b) in that a customer gives a business

Casualty had been dismissed as a liability insurer. We conclude that General Casualty made a strategic decision to rely solely on the coemployee coverage limitations in the Octopus policy in its motion for declaratory and summary judgment. As such, it cannot now contend that this evidence later presented by USAA in its own motion for declaratory judgment should be disregarded by this court.

employee permission to operate his or her motor vehicle for some length of time in order that some service or services may be provided.

¶ 33. In sum, in light of the plain meaning of the term "service station," and the broad scope of services Octopus provides, which includes driving its customers' vehicles on and off a conveyor belt, we hold that a "full-service" car wash such as Octopus is a service station and thus a statutory "motor vehicle handler" under Wis. Stat. § 632.32(2)(b)3.

## IV

¶ 34. Having determined that Octopus is a motor vehicle handler, it would seem evident that, on its face, Wis. Stat. § 632.32(6)(a) prohibits the coemployee coverage limitation contained in General Casualty's comprehensive insurance policy. Again, General Casualty's policy essentially maintains that an employee is not an insured for bodily injury or personal injury to a coemployee while that coemployee is in the course of his or her employment. Section 632.32(6)(a) provides that "[n]o policy issued to a motor vehicle handler may exclude coverage upon any of its officers, agents or employees when any of them are using motor vehicles owned by customers doing business with the motor vehicle handler."

¶ 35. Despite this unambiguous language, General Casualty argues that Wis. Stat. § 632.32, as a whole, does not apply to its comprehensive insurance policy. If it did, General Casualty reasons, an insurer would be required to assume a risk which it did not contemplate and for which it received no premium. As such, General Casualty contends that the holding in

*Heritage Mutual,* 248 Wis. 2d 111, ¶ 17, in which the court of appeals held that § 632.32(6) applied to a commercial general liability policy which included coverage for non-owned vehicles, is no longer good law.

¶ 36. We conclude that under Wis. Stat. § 632.32(6)(a), General Casualty is required to provide coverage to Cousins because he was using a motor vehicle owned by a customer doing business with Octopus, and therefore, the coemployee coverage limitations in General Casualty's comprehensive insurance policy are invalid. We further conclude that the holding of *Heritage Mutual* is still good law.

¶ 37. According to Wis. Stat. § 632.32(1), "[e]xcept as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle . . . ." Hence, the broad scope of the entire section is dependent upon whether a policy includes motor vehicle coverage, but each subsection can include provisions which exempt certain coverages from the scope as defined in § 632.32(1). Therefore, in any particular case, it is improper to conclude that, because one subsection has been held to apply to a certain type of policy, all the other subsections must be held to apply as well. Each subsection can provide its own exemption under the statutory framework.

¶ 38. The commercial general liability coverage issued as part of General Casualty's comprehensive insurance policy contains an endorsement entitled "OPERATION OF CUSTOMERS AUTOS ON PARTICULAR PREMISES" that provides liability coverage for customers' automobiles while on or next to the premises.

313

Therefore, under Wis. Stat. § 632.32(1), the provisions of § 632.32 apply to General Casualty's policy "except as otherwise provided."

¶ 39. The statutory section at issue, Wis. Stat. § 632.32(6)(a), does not otherwise provide for an exclusion to the general scope of the omnibus statute. Because General Casualty provided automotive liability coverage to Octopus, General Casualty cannot narrow the application of § 632.32 simply because the policy was called a comprehensive insurance policy instead of a motor vehicle policy. *See Heritage Mutual,* 248 Wis. 2d 111, ¶ 16. No policy issued to a motor vehicle handler may exclude coverage under § 632.32(6)(a). "No policy means no policy." *Bindrim v. B. & J. Ins. Agency,* 190 Wis. 2d 525, 534, 527 N.W.2d 320 (1995).

¶ 40. This court first addressed whether the omnibus statute was applicable to a comprehensive liability policy in *Nelson v. Ohio Casualty Insurance Co.,* 29 Wis. 2d 315, 139 N.W.2d 33 (1966). In *Nelson,* a City of Hartford employee was killed while in the course of his employment when he was run over by a city-owned dump truck. *Id.* at 317. The truck was operated by a coemployee during the unloading of the truck at a city-owned refuse dump, where another coemployee was also present. *Id.* Ohio Casualty Insurance Company (Ohio Casualty) had issued an automotive liability policy to the city covering the dump truck involved. *Id.* United Fire & Casualty Company (United) had issued a comprehensive liability policy to the city. *Id.* United's policy did not include within the definition of "insured" any employees of the city, and it excluded coverage to " 'automobiles if the accident occurs away from such premises or the ways immediately joining.' " *Id.* at 318 (citation omitted). Ohio Casualty argued that United's policy was required to extend coverage to the coemploy-

ees pursuant to Wis. Stat. § 204.30(3) (1959–60), the predecessor to Wis. Stat. § 632.32(3).[12] *Id.* at 319. United, on the other hand, argued "the omnibus coverage statute does not apply to a comprehensive liability policy which only insures motor vehicles operated on private premises or ways adjoining thereto." *Id.* at 320.

¶ 41. The *Nelson* court agreed with Ohio Casualty, concluding that no ambiguity existed in Wis. Stat. § 204.30(3) (1959–60), as it clearly referred back to the type of policy described in § 204.30(1), the predecessor to Wis. Stat. § 632.32(1).[13] *Id.* We interpreted this statutory language as applying to "any policy which extends coverage to damage caused by [any] motor vehicle for which the insured is liable. . . . We deem it immaterial that this coverage is provided by a comprehensive liability policy rather than one confined to coverage of motor vehicles." *Id.* at 320–21. This holding was later referenced in *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 168 N.W.2d 581 (1969).

---

[12] Wisconsin Stat. § 204.30(3) (1959–60) provides in part as follows:

No such policy [insuring against damage to person or property caused by any motor vehicle] shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy . . . .

[13] Wisconsin Stat. § 204.30(1) (1959–60) reads as follows:

No policy of insurance against loss or damage resulting from accident or injury to a person, and for which the insured is liable, or against loss or damage to property caused by animals or by any motor vehicle, and for which the insured is liable, shall be issued or delivered in this state . . . .

That is, the omnibus statute "applies not only to automobile liability policies but to a comprehensive liability policy to the extent it covers an automobile liability." *Id.* at 341.

¶ 42. The court of appeals in *Heritage Mutual* addressed a nearly identical scenario as presented in this case. In *Heritage Mutual,* Douglas Wilber, an officer of Wilber's Truck World, a motor vehicle handler, was involved in a motor vehicle accident while driving a customer's vehicle from a meeting. *Heritage Mutual,* 248 Wis. 2d 111, ¶ 2. Heritage Mutual Insurance Company (Heritage) had issued Wilber's Truck World a commercial general liability insurance policy excluding coverage for liability arising from the use of an automobile. *Id.,* ¶ 3. However, the policy included an endorsement which provided certain non-owned auto liability coverage. *Id.* The circuit court ultimately determined that the elements of Wis. Stat. § 632.32(6)(a) had been met and Heritage was required to provide coverage under its policy. *Id.,* ¶ 6.

¶ 43. On appeal, Heritage argued that Wis. Stat. § 632.32(6)(a) did not apply to its policy because the policy was a general liability policy and because the non-owned auto liability coverage provided under the policy was optional. *Id.,* ¶ 11. The court of appeals disagreed and concluded that based on the reasoning of *Bindrim,* 190 Wis. 2d 525, and the language of § 632.32(1), section 632.32(6)(a) applied to a general liability policy:

> Using the same reasoning as *Bindrim,* we conclude that even though the Heritage policy is a general liability policy, Wis. Stat. § 632.32(6)(a) applies. While not required by law to offer automobile liability coverage, Heritage did provide coverage with the endorsement for non-owned auto liability. The policy covered

Wilber's Truck World's liability resulting from an accident caused by a non-owned motor vehicle. The scope of § 632.32 applies to "every policy of insurance issued . . . against the insured's liability for loss or damage resulting from an accident caused by any motor vehicle. . . ." Wis. Stat. § 632.32(1). Therefore, the policy was required to comply with § 632.32(6)(a).

*Heritage Mutual,* 248 Wis. 2d 111, ¶ 17.

¶ 44. The court concluded with the following:

> The endorsement contains a clause that narrows the scope of the statute and excludes Wilber from coverage. Despite labeling the endorsement as a limitation rather than an exclusion, the end result is an endorsement that operates to exclude coverage where coverage would otherwise be available under the statute's plain terms. Because Wis. Stat. § 632.32(6)(a) applies and because the requirements for coverage have been met, Wilber is covered as a matter of law.

*Id.,* ¶ 18.

¶ 45. Just as the insurance company in *Heritage Mutual,* General Casualty cannot reduce the scope of Wis. Stat. § 632.32(6)(a) simply because the motor vehicle coverage is issued as part of a comprehensive insurance policy. The statute applies despite the fact that General Casualty's policy excludes coverage for any vehicles owned by Octopus, and no vehicles are specifically described in the policy. There is no language in Wis. Stat. § 632.32(6)(a) that would otherwise provide under these circumstances to remove General Casualty's policy from the requirements of the omnibus statute.

¶ 46. Contrary to General Casualty's contention, *Heritage Mutual* is still good law despite the additional coverages added to the omnibus statute since this court's decision in *Nelson,* 29 Wis. 2d 315, because the application of Wis. Stat. § 632.32 is extremely straightforward.

The language of § 632.32(1) unambiguously requires every insurance policy that provides motor vehicle liability coverage to meet the requirements of the other sections of the omnibus statute, unless otherwise provided. In light of the clear statutory language, we simply cannot reach a different result.

¶ 47. For its part, General Casualty argues that subjecting its policy to the requirements of Wis. Stat. § 632.32(6)(a) would then, in turn, require its policy to comply with Wis. Stat. §§ 632.32(3), (4), and (4m). First, these other subsections are not at issue in this case. Second, every subsection of § 632.32 does not automatically apply to all motor vehicle insurance policies. Again, the various provisions of the omnibus statute apply "except as otherwise provided." Wis. Stat. § 632.32(1). Whether a particular subsection of the omnibus statute applies to a commercial general liability policy or a commercial umbrella policy is determined by examining the specific language of that subsection to determine if it otherwise provides. Because we conclude that § 632.32(6)(a) applies to General Casualty's policy, we need not address the applicability of the other subsections of § 632.32 at this time.

¶ 48. General Casualty also argues that applying Wis. Stat. § 632.32(6)(a) to its policy requires it to assume a risk which it did not contemplate and for which it received no premium. This argument is unpersuasive. Simply put, if a subsection of the omnibus statute requires an insurer to provide a certain type of coverage, the insurer must provide the coverage even if the express terms of the policy do not provide the coverage. " 'Coverages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such

318

coverage is required by a properly enacted statute.' " *Progressive Northern Ins. Co. v. Romanshek,* 2005 WI 67, ¶ 13, 281 Wis. 2d 300, 697 N.W.2d 417 (quoting *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis. 2d 45, 53, 170 N.W.2d 813 (1969)).

¶ 49.  In sum, we conclude that the plain language of Wis. Stat. § 632.32(6)(a) compels the conclusion reached in *Heritage Mutual* that the statute applies to commercial general liability policies and commercial umbrella policies that include motor vehicle liability coverage. Therefore, the coemployee coverage limitations in General Casualty's comprehensive insurance policy are invalid, and General Casualty is required to provide coverage to Cousins.

V

¶ 50.  Finally, the court of appeals certified this appeal so that we may determine whether *Gorzalski,* 145 Wis. 2d 794, was decided correctly when it failed to enforce the requirement of coverage for a motor vehicle handler as mandated by Wis. Stat. § 632.32(6)(a). We conclude that *Gorzalski* was incorrectly decided because the court of appeals did not fully consider the plain language of § 632.32(6)(a), and it inappropriately relied on *Dahm v. Employers Mutual Liability Insurance Co.,* 74 Wis. 2d 123, 246 N.W.2d 131 (1976). We therefore overrule the holding of *Gorzalski* as it pertains to coemployee exclusions, and as such, it is not controlling to the outcome of this decision.

¶ 51.  In *Gorzalski,* Jack Gorzalski, an employee of Bob Tolkan Buick, Inc. (Bob Tolkan), a motor vehicle handler, was seriously injured when an automobile

driven by a coemployee struck him. *Gorzalski,* 145 Wis. 2d at 797. The automobile was left by a customer at the garage for repairs. *Id.* Frankenmuth Mutual Insurance Company (Frankenmuth) had issued a policy to Bob Tolkan with a coemployee exclusion precluding liability for an employee or officer who causes bodily injury to any fellow employee in the course of his employment. *Id.* at 803. Gorzalski argued the coemployee exclusion violated Wis. Stat. § 632.32(6)(a). *Id.* The court of appeals concluded that the coemployee exclusion in Frankenmuth's policy was legal under the holding of *Dahm:*

> [O]ur supreme court stated that the fellow employee exclusion clause will violate no rule of law in this state if it is held to be valid only where the injured party and the tortfeasor are employees of the named insured under the policy, and where the named insured employer is required to provide workmen's compensation coverage.

*Id.* at 804 (citing *Dahm,* 74 Wis. 2d at 131).

¶ 52.   The *Gorzalski* court relied on *Dahm* despite significant differences between the cases that altered the legal consequences of the coemployee exclusion. The tortfeasor in *Dahm,* who was not an employee of an "automobile handler,"[14] caused an injury to a coemployee while operating a forklift owned by his employer. *Dahm,* 74 Wis. 2d at 125. By contrast, the tortfeasor in *Gorzalski,* who was an employee of a "motor vehicle handler," caused an injury to a coemployee by negligently operating a customer's motor vehicle. Because the policy in *Gorzalski* was issued to a motor vehicle handler, the insurer should have been required to

---

[14] The term "automobile handler" was a precursor to "motor vehicle handler." *See* § 171, ch. 102, Laws of 1979.

comply with the plain language of Wis. Stat. § 632.32(6)(a). *See Heritage Mutual,* 248 Wis. 2d 118, ¶ 16. *Dahm* did not control because *Dahm* did not involve an "automobile handler" and thus did not involve the predecessor to § 632.32(6)(a), which governed "automobile handlers." In other words, *Dahm* involved a different statute than is at issue here, and the *Gorzalski* court incorrectly relied on the *Dahm* analysis without regard to the plain meaning of § 632.32(6)(a).

¶ 53. Moreover, the justification for upholding the coemployee exclusion in *Dahm* does not pertain to *Gorzalski. Dahm* was based on a situation where the injured party and tortfeasor were employees of the named insured, the tortfeasor was operating a vehicle owned or leased by the employer, and the employer was required to provide worker's compensation coverage. When the employer is required to provide worker's compensation, the coemployee exclusion operates to create no more or less coverage for the employer, as the named insured, than it does for the employee or coemployee. However, worker's compensation was not the sole remedy in *Gorzalski* because the tortfeasor was not operating a vehicle owned or leased by his employer. Wisconsin Stat. § 102.03(2) states in part that the worker's compensation statutes do not limit the right of an employee to bring an action against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer.[15] Unlike the tortfeasor in

---

[15] Wisconsin Stat. § 102.03(2) states in pertinent part as follows:

This section does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm, or against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemployee of the same employer to the extent that there would be

*Dahm,* Cousins will be exposed to large potential liability because worker's compensation is not the exclusive remedy. This will always be the case when a customer's auto is operated by an employee of a "motor vehicle handler." Moreover, an employee could become liable for all the worker's compensation benefits. *See* Wis. Stat. § 102.29(1). Therefore, the justification for upholding the validity of the coemployee exclusion in *Dahm* is not present under the facts of *Gorzalski.*

¶ 54. For these reasons, *Gorzalski* was wrongly decided, and we overrule that portion of its holding pertaining to the validity of Frankenmuth's coemployee exclusion. Contrary to *Gorzalski's* reasoning, courts should first consider the plain language of § 632.32(6)(a) when determining liability coverage under insurance policies issued to a motor vehicle handler, in instances when an employee injures a coemployee with a customer's vehicle.

## VI

¶ 55. Because General Casualty is required to provide liability coverage to Cousins, USAA's coverage limit is correspondingly reduced to zero dollars. USAA issued a personal auto policy and a personal umbrella policy to Paretti, each of which contained exclusions that allow USAA to reduce its coverage limits in accordance with Wis. Stat. § 632.32(5)(b). This subsection reads as follows:

> If the policy is issued to anyone other than a motor vehicle handler, it may limit the coverage afforded to a motor vehicle handler or its officers, agents or employees to the limits under s. 344.01(2)(d) and to instances

liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

322

when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

Wis. Stat. § 632.32(5)(b).

¶ 56.   USAA paid $25,000 into an account through the clerk of courts because General Casualty had previously been dismissed from the case. Because we find that General Casualty is required to provide coverage, USAA is entitled to the $25,000 it paid to the court. In essence, USAA's policies issued to Paretti are inapplicable to the resolution of this action, and USAA is entitled to dismissal from this lawsuit.

## VII

¶ 57.   In sum, we conclude the following:   (1) A full-service car wash is a motor vehicle handler under Wis. Stat. § 632.32(2)(b) because it is a "service station"; (2) The holding of *Heritage Mutual* retains its validity and the requirements of § 632.32(6)(a) apply to commercial general liability policies and commercial umbrella policies that provide automobile liability coverage; (3) *Gorzalski* was incorrectly decided, and we overrule its holding as it pertains to coemployee exclusions.

¶ 58.   As such, the final order issued by the circuit court on December 16, 2003, is reversed and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded.