# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-51294

GULF UNDERWRITERS INSURANCE COMPANY,

Plaintiff-Appellant,

v.

GREAT WEST CASUALTY COMPANY,

Defendant-Appellee,

v.

HAMMERBLOW CORPORATION,

Defendant-Appellant,

Appeal from the United States District Court
for the Western District of Texas
USDC No. 04-CV-432

Before KING, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

This is a declaratory judgment case addressing coverage under an automobile policy issued by Great West Casualty Co. ("Great West") with respect to an underlying state court tort suit brought by Arturo Garcia against Hammerblow Corporation ("Hammerblow"). Gulf Underwriters Insurance Co.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("Gulf"), Hammerblow's excess insurer, sought a declaration that the Great West policy afforded coverage to Hammerblow for the claims within the tort suit. The district court, relying on a mechanical device exclusion contained in the Great West policy, granted summary judgment to Great West. Because we conclude that the district court erred in upholding the exclusion, and therefore in granting summary judgment to Great West, we vacate the judgment entered below and remand for further proceedings.

I.

Hammerblow is a manufacturer and distributor of trailer jacks and couplers, headquartered in Wisconsin. Roehl Transport, Inc. ("Roehl") is a transport company that is based in Wisconsin, but also does business in Texas. In 1994, Hammerblow and Roehl reached an agreement authorizing Hammerblow to use Roehl's trailers. Under this arrangement, Roehl transported raw materials from Wisconsin to Hammerblow's El Paso facility. Roehl would then drop the loaded trailer in El Paso and hookup to a trailer with finished goods, which it would transport to other cities on its way back to Wisconsin. After Roehl dropped off the loaded trailer of raw materials in El Paso, Hammerblow would move the Roehl trailers to Hammerblow's Juarez, Mexico facility and then back to El Paso. It is undisputed that, under the agreement between the parties, Hammerblow had permission to load and unload the Roehl trailers with loads that would be transported by Roehl. However, the parties dispute whether the agreement permitted Hammerblow to load and unload the trailer with other materials, that would not be transported by Roehl, for its own purpose and use.

On December 11, 2002, Arturo Garcia, an independent Mexican truck driver, was injured at the El Paso Hammerblow facility when steel pipes fell

2

onto him from the bed of a trailer owned Roehl.  Prior to Garcia's arrival at the yard, Javier Rodriguez was utilizing a forklift to load the bundles of round steel tubes onto the flat-bed trailer.  Roehl had not been contracted to haul the steel tubes that Rodriguez was loading on to the Roehl trailer.  Rodriguez had not yet completed loading the trailer when Garcia arrived to pick up the load and was injured by the falling pipes.  At the time of Garcia's injury, Rodriguez was not operating the forklift, but was walking back to the forklift to complete the loading of the pipes.  After the pipes fell, Rodriguez used the forklift to move the pipes off Garcia.

Hammerblow had several insurance policies in place at the time of the accident.  It had a primary commercial general liability policy issued by Northfield Insurance Company ("Northfield") and a primary auto policy issued by Royal Insurance Company ("Royal").[1]  Hammerblow also had a commercial excess liability policy issued by Gulf.  This policy limited Gulf's indemnity obligation to "ultimate net loss" in excess of the amount of insurance provided by policies of "underlying insurance," and expressly provided that the policy was "excess over any other valid and collectible insurance whether such other insurance stated to be primary, contributing, excess, contingent or otherwise."

At the time of the accident, Roehl was covered by a commercial auto policy issued by Great West.  The Great West policy was issued in Wisconsin to Roehl, a Wisconsin insured.  Hammerblow is not named insured under this policy. The Great West policy provided primary liability coverage to anyone who permissibly

---

[1] Royal is not a party to this declaratory judgment action and paid its $1 million policy limits in the settlement of the Garcia tort suit.

used a covered auto owned by Roehl. The policy contains the following mechanical device exclusion:

> B. EXCLUSIONS
> This insurance does not apply to any of the following:
> . . . .
> 8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE
> "Bodily injury" . . . resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto" . . .

The policy states that: "'Auto' means a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads but does not include 'mobile equipment.'" The Great West policy issued to Roehl contains an endorsement stating that "[a]ny provision of this Coverage Part that is in conflict with a Wisconsin statute or rule is hereby amended to conform to that statute or rule."

On February 10, 2003, Garcia and his family filed a tort suit against Hammerblow and others in state court in El Paso.[2] After Garcia filed suit, Hammerblow tendered the claim to several insurers, including Gulf and Great West, for defense and coverage. Initially, Great West denied Hammerblow's request for coverage and defense, but subsequently, pursuant to a reservation of rights, Great West agreed to defend Hammerblow in the underlying tort suit in conjunction with Royal.

Gulf then filed this declaratory judgment action seeking a declaration that Hammerblow qualifies as an additional insured under the Great West policy; that the Gulf Policy is the "excess policy;" and that the Great West policy is an

---

[2] The state tort suit settled shortly after the district court entered its final judgment in this declaratory judgment action. The settlement was funded by Royal and Gulf; Great West did not contribute.

4

"underlying insurance" policy affording coverage to Hammerblow. At Great West's request, Hammerblow was added to the suit as a defendant. Hammerblow then filed a cross-claim against Great West seeking a declaration that Great West has a duty to defend and indemnify Hammerblow in the underlying lawsuit.

Gulf and Great West filed cross-motions for summary judgment. The district court granted the motion of Great West on the basis that the mechanical device exclusion in the Great West policy is valid under Wisconsin law and precludes the damages sought. The court then denied all other pending motions as moot, including Gulf's motion for summary judgment. Gulf subsequently sought reconsideration and leave to file a second amended complaint, but the district court denied both requests. Hammerblow and Gulf filed a timely notice of appeal from the district court's grant of Great West's motion for summary judgment and denial of Gulf's motions.

## II.

This court reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court. Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 262-63 (5th Cir. 2005). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, we review de novo a district court's determination of a state law question. Folks v. Kirby Forest Indus., Inc., 10 F.3d 1173, 1182 (5th Cir. 1994).

Coverage under an insurance policy is generally a question of law, Kremers-Urban Co. v. Am. Employers Ins. Co., 351 N.W.2d 156, 163 (Wis. 1984), although occasionally insurance coverage is the subject of factual disputes that make summary judgment inappropriate. See, e.g., Atl. Mut. Ins. Cos. v. Lotz, 384 F. Supp. 2d 1292 (E.D. Wis. 2005).

### III.

It is undisputed that the Great West policy contains a clear and unambiguous mechanical device exclusion. However, on appeal, Gulf contends that the mechanical device exclusion contained in the Great West policy is invalid under Wisconsin law[3] because Wisconsin law mandates that coverage under an automobile policy extend to a third party who is unloading or loading an insured vehicle. Therefore, Gulf argues, the mechanical device exclusion is unenforceable, and the district court's grant of summary judgment to Great West was in error.

Under Wisconsin law, when an exclusion in an insurance policy is in reference to some risk of coverage not required by statute, such exclusion is valid. See Schneider v. Depies, 62 N.W.2d 431, 434 (Wis. 1954). Conversely, Wisconsin courts have invalidated exclusions contrary to the provisions of the Wisconsin insurance statutes or public policy. See, e.g., Rocker v. USAA Cas. Ins. Co., 711 N.W.2d 634, 645 (Wis. 2006). Finally, "[c]overages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted

---

[3] The parties agree that, under Texas choice of law rules, Wisconsin law governs the issue of coverage under the Great West policy. See, e.g., St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F. 3d 202 (5th Cir. 1996).

statute." Id. at 646 (quoting Progressive N. Ins. Co. v. Romanshek, 697 N.W.2d 417 (Wis. 2005)).

Wisconsin Statute § 194.41(1) requires, in part, that a motor carrier be covered by an insurance policy providing:

> that the insurer shall be directly liable for and shall pay all damages for injuries to or for the death of persons or for injuries to or destruction of property that may be recovered against the owner or operator of any such motor vehicles by reason of the negligent operation thereof in such amount as the department may require.

WIS. STAT. § 194.41 (2006). The statute does not define "operation," but in Mullenberg v. Kilgust Mech., Inc., 612 N.W.2d 327 (Wis. 2000), the Wisconsin Supreme Court examined "[w]hether Wis. Stat. § 194.41 because of its use of the term 'negligent operation' requires insurers to cover the loading activities of third-parties." Id. at 328. The court answered in the affirmative, stating that the words "operation" and "operator" in § 194.41 "must be read in the context in which they are used in order to promote the legislature's objective in enacting the statute." Id. Further, under Wisconsin Statute § 194.02, the words must be given "'the most liberal construction to achieve the aim of a safe, competitive transportation industry.'" Id. (citing WISC. STAT. § 194.02). Applying this principle, the court concluded that "the word 'operation' is not to be restricted to only a moving vehicle" and held that "'negligent operation' encompasses loading and unloading" and that "'operator' includes a third party permissively unloading the vehicle." Id. at 330-331.

Under Mullenberg, it is clear that § 194.41 mandates that Great West provide coverage for injuries occurring during the loading and unloading of a vehicle by a permissive user. 612 N.W.2d at 328; see also Lukaszewicz v.

Concrete Research, Inc., 168 N.W.2d 581, 586 (Wis. 1969) (interpreting "operate" to include the loading and unloading of a vehicle); Bauer v. Century Sur. Co., 718 N.W.2d 163, 165 (Wis. Ct. App. 2006) ("It is undisputed that if Johnston was loading or unloading the flatbed truck when the power line incident occurred, Great West must provide insurance coverage to Johnston under the policy." (citing Mullenberg, 612 N.W.2d at 327)).[4]  Therefore, to the extent that the mechanical device exclusion omits coverage for loading and unloading, the exclusion is void under Wisconsin law, and Great West is obligated to provide such coverage under the policy.

Great West attempts to distinguish Mullenberg on the basis that it did not expressly consider the issue of whether § 194.41 requires coverage for loading and unloading conducted using motorized equipment not attached to the covered vehicle and not insured by the insurer.  Great West further contends that the mechanical device exclusion at issue here is "widely used in insurance policies" and "routinely upheld."  It argues that adopting Gulf's construction of the statute would require Great West to provide coverage for a separate risk, the mechanical device, which Great West has not elected to insure and for which it has not received a premium.  In support, Great West points us to a number of cases from other jurisdictions upholding similar exclusions, including Travelers Indemnity

---

[4] Great West attempts to distinguish Mullenberg on the grounds that its holding rested on whether the exclusion applied equally to all insureds under Wis. Stat. § 632.32.  This argument is meritless.  Because the court reached its holding based on the language of § 194.41, the Mullenberg court explicitly declined to consider whether § 632.32 would invalidate the exclusion at hand.  See Mullenberg, 612 N.W.2d at 329 n.4.  Rather, the court clearly held that: "We conclude that the word 'operation' in Wis. Stat. § 194.41(1) includes loading and unloading and an individual permissively unloading the vehicle is covered by the motor carrier's policy."  Id. at 328-29.

8

Co. v. General Star Indemnity Co., 157 F. Supp. 2d 1273 (S.D. Ala. 2001); Excel Logistics, Inc. v. Maryland Casualty Co., No. CV-93-0046415-S, 1995 Conn. Super. LEXIS 373 (Conn. Super. Ct. Feb. 1, 1995); and Hanover Insurance Co. v. Canal Insurance Co., No. 05-1591(SDW), 2007 U.S. Dist. LEXIS 39635 (D.N.J. April 3, 2007). However, as the Wisconsin Supreme Court has noted: "Cases from outside of this state are of little help in deciding a construction of our statute." Lukaszewicz, 168 N.W.2d at 586.

As a federal court sitting in diversity, in the absence of a final decision by the state's highest court on the issue at hand, it is our duty to determine, in our best judgment, how the highest court of the state would resolve the issue if presented with the same case. Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992). In Mullenberg, the Wisconsin Supreme Court stated that:

> A motor carrier by definition undertakes to transport passengers and property. Wis. Stat. § 194.01(1). Inherent in this task is that the carrier will be loaded and unloaded. Loading and unloading involves repeated, frequent contact with the motor carrier. Within this framework and considering the subject matter of Wis. Stat. ch. 194, as well as the legislature directive to construe ch. 194 liberally to protect the shipping public as well as the traveling public, we conclude that "negligent operation" encompasses loading and unloading.

612 N.W.2d at 330-31. In light of these broad policy concerns, we conclude that the Wisconsin Supreme Court would interpret the word "operation" in § 194.41 to encompass all loading and unloading, including that done by use of a mechanical device. See Bauer, 718 N.W.2d at 165 (holding that § 194.41 mandated that the insurer provide coverage for an injury occurring during

9

unloading of the covered vehicle and involving the use of a mechanical device). Our conclusion furthers Wisconsin's goal of interpreting § 194 "liberally" to "protect the shipping public as well as the traveling public." See Mullenberg, 612 N.W.2d at 331. Although Great West advances some persuasive policy arguments in support of its position, it has not pointed us to any caselaw indicating that Wisconsin would adopt these arguments and exclude loading and unloading by way of mechanical devices from the scope of § 194.41.

Therefore, because we conclude that the word "operation" in § 194.41 includes loading and unloading through the use of a mechanical device, an injury occurring during the permissive unloading of the vehicle must be covered by the motor carrier's policy, even if such loading or unloading is accomplished through the use of a mechanical device. To the extent that the Great West policy excludes such coverage, the exclusion is invalidated and coverage is compelled as though a part of the policy. Rocker, 711 N.W.2d at 646. Therefore, the application of the mechanical device exclusion contained in the Great West policy can not support a grant of summary judgment in its favor.

IV.

This is not, however, the end of our inquiry. As the Wisconsin Supreme Court has held, coverage under § 194 is only mandated if the individual was permissively loading or unloading the vehicle. See Mullenberg, 612 N.W.2d at 330-31 (defining the word "operator" in § 194.41 to include "a third party permissively unloading the vehicle"). Therefore, Great West is only required to provide coverage for Garcia's injury if Hammerblow's loading of the pipes onto the trailer was a permissive use. The burden of proving requisite permission rests with the party seeking to establish coverage. Derusha v. Iowa Nat'l Mut.

10

Ins. Co., 181 N.W.2d 481, 482 (Wis. 1970). Each party argues that the evidence regarding permissive use entitles it to summary judgment.

The district court's opinion evidences some confusion over the proper allocation of the burdens of proof with regard to summary judgment on this issue. "[T]he party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). If the moving party meets the initial burden of showing that there is no genuine issue, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(e). The nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence. Little, 37 F.3d at 1075.

Applying this framework to the case at hand, with regard to Great West's motion for summary judgment, Great West was required to "demonstrate the absence of genuine issue of material fact" that Hammerblow did not have permission to load the trailer. Id. If Great West did so, the burden would then shift to Gulf to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial" regarding whether Hammerblow had permission.[5] Id. If Gulf failed to meet this burden, Great West's motion would be granted. Conversely, to succeed on its motion for summary judgment, Gulf

---

[5] It is at this point that the district court erred. Rather than permit a showing of a dispute of material fact over the issue of permission to defeat Great West's motion for summary judgment, the district court appears to have required Gulf to show that Hammerblow had permission as a matter of law. This was incorrect, as a showing that the issue of permission was squarely in dispute would be sufficient to defeat Great West's motion.

was required to demonstrate an "absence of a genuine issue of material fact" that Hammerblow had permission to load the trailer. Therefore, if a genuine question of fact exists as to whether Hammerblow had permission to load and unload the trailer with the pipes, it would not be appropriate to grant either parties' motion for summary judgment.

Gulf argues that it is entitled to summary judgment because the undisputed evidence demonstrates that, as a matter of law, Hammerblow was permitted to load and unload the trailers for its own purposes. Great West argues that § 194.41 does not mandate coverage for Hammerblow because the evidence shows that, as a matter of law, Hammerblow was not a permissive user at the time of the accident. Our review indicates that the following evidence was submitted by the parties on the issue of permission: April 4, 1994 letter written by Michael Gross, a sales representative of Roehl; affidavit signed by Gross; deposition excerpts of Gross; the deposition testimony of Tom Liebl, a former Hammerblow employee responsible for scheduling the delivery of raw materials from Wisconsin to the El Paso plant; and the affidavit of Ted Christie, the general manager of the Hammerblow El Paso plant at the time of the incident.

A review of this evidence indicates that the issue of permission is squarely in dispute. Both parties produced testimony supporting their view of the permission issue. Great West produced an affidavit from Gross that "under the agreement, the trailer was not supposed to be used for any loads that Roehl itself was not going to pick up and was not to be used at Hammerblow's will and convenience." The affidavit also states that Rodriguez's loading of the pipes onto the trailer was outside of the agreement with Roehl. His affidavit also indicates his belief that Hammerblow was never permitted, in the history of the

12

agreement, to use the trailers for its own purposes. In his deposition testimony, Gross discusses the unloading and loading permitted under the arrangement. He stated that with respect to the trailers surrendered to Roehl, "he expected it to be unloaded in Mexico and reloaded in Mexico with freight that Roehl was going to haul." However, as Gulf points out, Gross's testimony is directly contradicted by that of Liebl and Christie. Liebl testified that his understanding of the agreement was that "whatever trucking outfit there was that [sic] going down there that they'd have to allow their trailer to be transported across the border and unloaded and reloaded if needed." In his affidavit Christie states that the business arrangement "included Roehl's agreement to keep a Roehl trailer at the Hammerblow facility in El Paso/Juarez so that it would be unloaded and loaded by Hammerblow at Hammerblow's convenience. He concluded that "[u]nder the business arrangement in place prior to and during December 2002, Hammerblow was permitted by Roehl to load and unload Roehl trailers with material at the Hammerblow facility in El Paso."

Given the conflicting testimony, neither party is entitled to summary judgment because there is a genuine issue for trial regarding permission. At summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Here, each party provided evidence sufficient to support a jury verdict in its favor regarding permission. Resolution of this issue comes down to a credibility determination, which is a genuine issue for trial.

V.

For the reasons stated above, we VACATE the district court's grant of summary judgment in favor of Great West and its dismissal of Gulf's motions for summary judgment and for leave to file a second amended complaint and REMAND this case to the district court for further proceedings not inconsistent with this opinion.