Hardware Mutual Casualty Company, Respondent, vs. Saint Paul-Mercury Indemnity Company, Appellant.

*May 6—June 2, 1953.*

For the appellant there was a brief and oral argument by *Donald L. Farr* of Eau Claire.

For the respondent there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox*.

FRITZ, C. J.    On October 30, 1949, a driver of the Walter Brewing Company stopped one of its trucks in front of a tavern for the purpose of delivering kegs of beer into the basement of the tavern.  In the sidewalk in front of the tavern, there was a trap-door opening used for putting the kegs from the truck into the basement.  The brewing company's driver got off the truck and walked to the sidewalk and opened the trap door preparatory to putting the kegs of beer from the truck through the trap door into the basement.  The truck was double-parked on the street and as the driver returned to the truck he was asked to move it so that a car which was parked between the truck and the curb could get out.  The driver got on the truck to move it and permit the other car to get out into the street, and while the truck driver

was doing that, John Heinzke fell into the trap-door opening which was left unattended by the driver.

At said time, the plaintiff Hardware Mutual Casualty Company had in effect a policy of insurance which it had issued to the Walter Brewing Company, and wherein it agreed to pay to said company such sums of money as it should become obligated to pay in the event of bodily injury caused by an accident arising out of the brewing company's ownership, maintenance, or use of any of its motor vehicles, including the loading or unloading of said vehicles. The policy covered not only ownership, maintenance, and use, but also had a clause which extended the coverage of the policy by the addition of a "loading and unloading" clause.

At the same time, the Walter Brewing Company also had in effect a policy of insurance issued to it by the Saint Paul-Mercury Indemnity Company, wherein it agreed to pay said brewing company all sums of money which said company should become obligated to pay by reason of bodily injury resulting from any act of any employee or agent of said brewing company in the conduct of its business, excepting those acts arising out of the brewing company's ownership, maintenance, or use of any of its motor vehicles, including the loading or unloading thereof.

On January 21, 1950, John Heinzke commenced an action to recover damages for the injuries he sustained upon stepping into the trap-door opening and he named as defendants in said action the Walter Brewing Company, its driver, the operator of the tavern, and the owner of the building in which it was located. The defense of Heinzke's action was tendered by the plaintiff Hardware Mutual Casualty Company to the defendant Saint Paul-Mercury Indemnity Company which refused to defend the action; and it was thereafter settled by the Hardware Mutual Casualty Company for $1,500. The action was based on the theory that the driver of the brewing company's truck was negligent in leaving

the trap door in the sidewalk open and unattended while the driver moved the truck.

The issue in this action is whether the operation which was being performed by the brewery truck driver at the time the accident happened, comes within the rule laid down in *Stammer v. Kitzmiller,* 226 Wis. 348, 276 N. W. 629. The facts in that case are somewhat similar to the facts in the case at bar, except that in the *Stammer Case* the driver had removed the beer from the truck and placed it through a trap door into the basement; and the driver of the truck had gone into the tavern to have a sales slip signed and while he was inside the tavern, the plaintiff in that case fell into the trap-door opening.

In the *Stammer Case* the court stated (p. 352) :

"When the goods have been taken off the automobile and have actually come to rest; when the automobile itself is no longer connected with the process of unloading; and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. The precise line at which the unloading of the automobile ends and a further phase of commerce such as the completion of delivery begins after unloading may in some cases be difficult of ascertainment, but where, as here, the merchandise had been removed from the truck and considerable time had elapsed after anything was done which could reasonably be said to be connected with the actual unloading, there is no difficulty in limiting the responsibility of the insurer who covers loading and unloading operations, and fixing the liability of an insurer who protects against loss arising from the acts caused by employees of the assured engaged in the discharge of their duties to carry on its work off the assured's premises. While the open hatchway may have been a convenience in the process of further delivery of the goods, it was not, under the facts with which we are dealing, included in the process of unloading the truck. *Franklin Co-op. Creamery Asso. v. Employers' Liability*

*Assur. Corp.* (Minn.), 273 N. W. 809; *Zurich General Accident & Liability Ins. Co. v. American Mutual Liability Ins. Co.* 118 N. J. Law, 317, 192 Atl. 387."

In the case at bar, the truck and the beer had arrived at the intended destination on the street, and the opening of the trap door by the driver was properly and necessarily the actual commencement of the physical operation of unloading the beer. Apparently no time had needlessly elapsed between the driver's opening of the trap door and the intended continuing movement of the beer into the basement for storage, which was an essential part of the unloading operation.

*By the Court.*—Order reversed with directions to sustain the demurrer.

BROWN, J., dissents.