WILDMAN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 58.  Submitted under sec. (Rule) 251.54 June 5, 1975.—
Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 809.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

ROBERT W. HANSEN, J. By writ of error, the plaintiff in error (hereinafter referred to as defendant) challenges his conviction on a charge of cruelty to animals. The challenge requires review of (1) the statute involved; (2) the record of the trial; and (3) the three issues raised by the defendant.

*The statute involved.*

At the time here involved, the statute, sec. 947.10 (1) (b), Stats. 1971, since revised and renumbered to become secs. 948.13 and 948.15, Stats., provided:

"947.10 **Cruelty to animals.** (1) Whoever does any of the following may be fined not more than $500 or imprisoned not more than one year in county jail or both:
". . .
"(b) Abandons or fails without reasonable excuse to provide necessary food, care or shelter for any animal in his custody; . . ."

*The record at trial.*

At the trial to the court the following testimony was presented and evidence adduced:

The county humane officer testified that, following receipt of a complaint of dead and dying animals on defendant's farm, he went to the farm and found defendant's cattle to be alive but not in very good condition. Following a second complaint from a neighbor who was engaged in the livestock business and had loaned a bull to defendant for breeding purposes, he returned to the farm with a veterinarian and found six dead cows in the barn, the decaying corpse of a dead steer in the upstairs portion of the barn, the legs of dead cattle protruding from a manure pile, and the corpse of a dead cow in the yard under a water trough. The humane officer testified that there were fresh manure piles in the barn, but also testified the defendant told him that he (the defendant) could not afford to feed his cattle. The owner of the bull, the veterinarian and a man hired to remove the dead and

live cattle testified similarly to the presence of dead cattle, the emaciated condition of the live cattle and the presence of only a small amount of feed.

Two veterinarians testified on behalf of the state, with the qualifications of both stipulated to before their testimony was taken. One, who had performed a necropsy upon one of the dead cattle found in defendant's barn, testified that it was his opinion that the animal had starved to death. The other, who had examined portions of the cow upon which the necropsy was performed, testified that the cause of death was emaciation, basically as a result of malnutrition. The veterinarian who conducted the necropsy also testified that he found the bovine corpse examined to establish the presence of a kidney infection (corynebacterium pyogenes) which, while not a killer by itself, can contribute to cause of death. He stated that this particular kidney disease usually does not become operative until the animal is under stress, such as being in a state of malnutrition.

The defendant testified that he fed the cattle 25 to 30 pounds of grain per day in addition to hay. For the defense, a neighbor testified he had seen eight to 10 bags of feed in the driveway to defendant's farm; a feed supplier testified to selling three tons of feed to defendant, stating that such amount would feed 20 cows for two weeks; the manager of a cooperative exchange testified to selling approximately one ton of feed to defendant on five occasions prior to the time here involved. The defendant testified that, about two weeks prior to the visit of the owner of the bull and the veterinarian to his farm, he discovered that some of the cattle had a kidney infection and administered penicillin to them. He testified that he continued to feed the cattle but that they did not want to eat and died off. Ten dead cattle were found on the farm. One more could not be moved and had to be shot. The live cows had difficulty in standing and walking when loaded on the truck to be taken away.

*The issues raised.*

The defendant's position is that a low, but legal, maintenance diet could have fostered an infectious kidney disease, with death and emaciated condition of the cattle due to disease not starvation. Defendant seeks reversal on one of these three grounds:

*Insufficiency of evidence.* The defendant contends that the evidence here was insufficient to establish that he failed to provide the necessary food for the cattle's survival. He further argues that the evidence of fresh manure and feed purchases renders incredible as a matter of law the testimony offered on behalf of the prosecution. As to the first contention, it is clear that the trier of fact could reasonably infer from this evidence that this defendant failed to feed his cattle a sufficient amount of food to sustain life. At the most, the defense testimony as to the animals being fed would support a different but also reasonable inference as to the cause of death and emaciation. Where more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. The evidence relied upon by the defendant does not render the evidence supporting the conviction incredible. To be that, the evidence must be " '. . . in conflict with the uniform course of nature or with fully established or conceded facts.' " *Simos v. State* (1972), 53 Wis. 2d 493, 496, 192 N. W. 2d 877. Only where evidence relied upon by a trier of fact is "inherently or patently incredible" will this court substitute its judgment for that of the fact finder. *Lemerond v. State* (1969), 44 Wis. 2d 158, 162, 170 N. W. 2d 700. Here the inference drawn and conclusion reached by the trial court may well be the only reasonable inference and conclusion permitted by this record. Certainly it is a reasonable inference and conclusion, adequately supported by testimony that is not incredible.

*Judicial notice.* The defendant does not and could not argue that the testimony of the veterinarians as to cause of death was contradicted by defense experts, with the kidney disease theory established as the cause of death. There was no such testimony, and there were no such expert witnesses called to the stand by the defense. Rather the defense contends that the trial court was required to take judicial notice of the existence of cattle diseases, infectious kidney ailments included. Appellate defense counsel asks this court to take judicial notice of "known and verifiably certain facts" concerning cattle and cattle diseases, including the fact that infectious nephritis can spread among animals in a herd, lead to emaciation and death. The doctrine of judicial notice does contemplate that factors beyond and outside a court record can be considered in certain situations. *Fringer v. Venema* (1965), 26 Wis. 2d 366, 376, 132 N. W. 2d 565, 133 N. W. 2d 809. However, the trial judge or the party requesting judicial notice is to notify the parties or the adversary so that the party given notice can ". . . point out to the court that the facts noticed are debatable or doubted by some significant portion of the scientific community." *State v. Barnes* (1971), 52 Wis. 2d 82, 88, 187 N. W. 2d 845. Here the trial court did not even have called to its attention the facts that defendant now argues should have been accepted as verifiably certain. *Bear v. Kenosha County* (1963), 22 Wis. 2d 92, 98, 125 N. W. 2d 375. It is too late, far too late, on appeal to ask this court to read textbooks, not produced at the time of trial, to determine if the cattle that died could have succumbed to a kidney ailment instead of having starved to death. The only issue before us is whether or not the evidence adduced in the trial court is sufficient to sustain conviction, and we repeat that it is.

*Interest of justice.* Finally, the defendant seeks a discretionary reversal and a new trial granted in the interest of justice. Sec. 251.09, Stats. The sole reason given

for seeking such result is that the trier of fact was presented with ". . . an entirely lopsided case without the benefit of expert testimony on behalf of the defendant demonstrating that the cattle's death might well have been attributable to kidney disease and not starvation." Thus, defendant now argues, the controversy was not fully tried. The argument assumes that expert testimony was available to trial counsel to develop the kidney disease theory as to cause of death. Making such assumption, the claim of right to a reversal in the interest of justice is no more and no less than an attack upon the competency of trial counsel. However, counsel on appeal, in defendant's brief, states: "At this point it is not known what form of nephritis plagued the cows in question, . . ." and refers to ". . . the confusion surrounding what form of nephritis afflicted the cows. . . ." There is no reason for holding that what is not known or clear to appellate counsel, long after the trial was over, was known or could have been established by trial counsel. Moreover, in order for this court to exercise its discretionary power to reverse in the interest of justice, it ". . . should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice." *Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183. This record gives no basis for finding that it is probable that there has been here a miscarriage of justice. Review of the record established at time of trial compels the conclusion that conviction of this defendant was supported by the evidence and that it is not a case in which the defendant should not have been found guilty or that justice demands that defendant be given another trial.

The order of the circuit court affirming the judgment of the county court is affirmed. The writ of error seeking reversal of that affirmation of that determination is denied.

*By the Court.*—Order affirmed.