Delvin E. BAUER and Arlene A. Bauer,
Plaintiffs-Co-Appellants,

MONTANA STATE FUND,
a foreign insurance corporation,
Plaintiff,

v.

CENTURY SURETY COMPANY,
a foreign insurance corporation,
Defendant-Appellant,

GREAT WEST CASUALTY COMPANY,
a foreign insurance company,
Defendant-Respondent,†

James F. JOHNSTON d/b/a
Johnston Crane Company, a domestic company,
Defendant.

Court of Appeals

*No. 2005AP1218. Submitted on briefs February 27, 2006.
—Decided May 2, 2006.*

2006 WI App 113

(Also reported in 718 N.W.2d 163.)

† Petition to review denied 9-11-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Susan R. Tyndall* of *CMT legal Group, Ltd.* of Waukesha.

On behalf of the plaintiffs-co-appellants, the cause was submitted on the brief of *James A. Pitts* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.* of Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael R. Vescio* of *O'Hagan, Smith & Amundsen, LLC* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Century Surety Company and Delvin and Arlene Bauer (collectively, Century) appeal the circuit court's summary judgment in favor of Great West Casualty Company, which stated that Great West had no duty to defend or indemnify James Johnston d/b/a Johnston Crane Company. The sole issue is whether Johnston was in the process of unloading a turbine from Bauer's truck at the time the accident occurred and therefore became an operator of Bauer's truck. Because we conclude that Johnston became an operator of Bauer's truck at the time of the accident, we reverse the summary judgment and remand the action for further proceedings.

## BACKGROUND

¶ 2. Delvin Bauer was an interstate truck driver who transported a turbine to a Wisconsin Public Service Corporation plant on the back of a flatbed truck owned by his employer, C.W. Enterprises, Inc. Upon arrival at the plant, Bauer parked his truck outside of the main gate and prepared the turbine for unloading by uncovering and unfastening it from the truck.

¶ 3. Johnston arrived with a truck crane he owned and operated and parked it in front of Bauer's truck and underneath overhead power lines. While Johnston was preparing to switch the fitting attachment at the end of the crane arm with another that would ease the unloading of the turbine from the flatbed truck, he raised the crane into the power lines, which caused explosions and sent an electrical surge through Bauer, injuring him.

¶ 4. The Bauers brought suit against Johnston and his insurer Century Insurance Company. They also sued Great West, who provided commercial automobile

and general liability insurance coverage to C.W. Enterprises, on the theory that Johnston became an operator of Bauer's truck by unloading it. Great West moved for summary judgment on the issue of insurance coverage, contending that no "operation" occurred that imposed coverage, pursuant to Wis. Stat. § 194.41.[1] The circuit court granted summary judgment, concluding that Johnston was not operating Bauer's truck when the power line incident occurred. The court ruled:

> I feel that there has to be something more active and actual as to moving the cargo off the flatbed truck. I understand the complete operation doctrine gives a broader definition to what can be included, however, I'm convinced that in this situation, these vehicles were not even in their final positions for unloading to commence and that the changing of the fitting at the end of the boom was merely prepatory and in no way was Johnston operating the Bauer vehicle. I think that was to come after the gates were open, after the vehicles were driven in and then there would be active and actual unloading procedures commenced by Johnston to lift the turbine engine off the flatbed truck.

## STANDARD OF REVIEW

¶ 5. We review summary judgment without deference, using the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08. Our summary judgment methodology is well documented, and it will not be repeated

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

here. *See, e.g., Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). The issue on appeal involves application of a statute to an undisputed set of facts, which is a question of law that we review independently. *Nichols v. Nichols*, 162 Wis. 2d 96, 103, 469 N.W.2d 619 (1991).

## DISCUSSION

¶ 6. Century contends that Great West is obligated to provide coverage because Johnston's actions were part of the unloading process. It is undisputed that if Johnston was loading or unloading the flatbed truck when the power line incident occurred, Great West must provide insurance coverage to Johnston under the policy. *See Mullenberg v. Kilgust Mech., Inc.*, 2000 WI 66, 235 Wis. 2d 770, 612 N.W.2d 327.

¶ 7. In *Mullenberg*, a case also involving Great West as an insurer, a truck driver, Roger Mullenberg, was standing near his truck while an employee of Kilgust Mechanical was unloading the truck's trailer. *Id.*, ¶ 6. Pipes rolled off the trailer, striking Mullenberg and injuring him. *Id.* Mullenberg brought a claim for damages against Kilgust. Kilgust subsequently impleaded Great West, Mullenberg's insurer, arguing that Great West provide primary coverage to the Kilgust employee because during the accident he was operating the vehicle insured by Great West. *Id.*, ¶ 7.

¶ 8. Great West contended that it was not required to defend or indemnify Kilgust because its policy precluded coverage for persons loading or unloading the insured truck. *Id.*, ¶ 8. Our supreme court held that the policy language that Great West cited was contrary to Wis. Stat. § 194.41, and therefore Great West was required to provide coverage. The court reasoned:

It is undisputed that the endorsement provision in Great West's policy incorporates Wis. Stat. § 194.41. Section 194.41 requires a motor carrier to be covered by an insurance policy that will pay for damages recoverable "against the owner or operator" because of "negligent operation." Kilgust and [its insurer] contend that by unloading the truck, Kilgust's employee was engaged in "operation" of the truck, and that § 194.41 therefore mandates coverage.

Wisconsin Stat. ch. 194 does not define "operation" or "operator." These words must be read in the context in which they are used in order to promote the legislature's objective in enacting the statute. *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969) (interpreting the word "operate" in the omnibus statute). As our cases have noted, "[o]perate has varying meanings according to context which primarily determines its meaning." *Id.* In construing ch. 194 we must follow the legislative intent set forth in Wis. Stat. § 194.02. This section requires that ch. 194 be given *"the most liberal construction* to achieve the aim of a safe, competitive transportation industry."* Wis. Stat. § 194.02.

*Id.,* ¶¶ 11–12 (emphasis added).

¶ 9. The court went on to explain that, given the legislature's intent, the term "operation" included loading and unloading vehicles. The court stated:

In *Wiedenhaupt v. Vander Loop,* 5 Wis. 2d 311, 317, 92 N.W.2d 815 (1958) we examined the phrase "negligent operation" in Wis. Stat. § 260.11 (1957) and held that "[t]he word 'operation' is not to be restricted to only a moving vehicle". In *Lukaszewicz,* we noted that if the legislature intended the statute to cover only riding or driving on the highway, it would not have used the broader word "operation." *Lukaszewicz,* 43 Wis. 2d at 341–42. The reasoning in these cases is applicable to Wis. Stat. § 194.41. A motor carrier by definition un-

dertakes to transport passengers and property. Wis. Stat. § 194.01(1). Inherent in this task is that the carrier will be loaded and unloaded. Loading and unloading involves repeated, frequent contact with the motor carrier. Within this framework and considering the subject matter of Wis. Stat. ch. 194, as well as the legislature directive to construe ch. 194 liberally to protect the shipping public as well as the traveling public, we conclude that "negligent operation" encompasses loading and unloading.

*Id.*, ¶ 15 (footnote omitted). The court also noted that a third party operator, such as Johnston here, can be an operator of a such a vehicle, stating, "Where the operation at issue is loading and unloading, we conclude that 'operator' includes a third party permissively unloading the vehicle." *Id.*, ¶ 17.

¶ 10. Wisconsin has expressly adopted the complete operation doctrine to determine which loading and unloading actions constitute an operation for insurance coverage purposes. *Komorowski v. Kozicki*, 45 Wis. 2d 95, 105, 172 N.W.2d 329 (1969). The court noted:

> Under the so-called "complete operation" doctrine . . . the "loading and unloading" clause covers the *entire process* involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made, and for all practical purposes, any distinction between "unloading" and "delivery," and between "loading" and "preparatory actions," is not considered.

*Id.* at 102 (emphasis added) (quoting Annot. 95 A.L.R.2d 1112, 1129 (1964) (superseded by Kristine Cordier Karnezis, Annotation, *Risks Within "Loading*

*and Unloading" Clause of Motor Vehicle Liability Insurance Policy,* 6 A.L.R.4th 686 (1981)).

¶ 11. In its express adoption of the complete operation doctrine, the court noted that it actually adopted the complete operation doctrine sub silentio in a preceding case, *Hardware Mut. Cas. Co., v. St. Paul-Mercury Indem. Co.,* 264 Wis. 230, 231, 58 N.W.2d 646 (1953). In *Hardware Mutual,* a deliveryman double parked his truck and opened a hatchway in the sidewalk in preparation of unloading beer kegs from his truck to a customer's basement. *Id.* Subsequent to opening the hatchway but before actually removing the beer kegs from the truck, the driver moved his truck so another vehicle could pass. *Id.* While the driver moved his truck, a pedestrian fell through the hatchway and was injured. *Id.*

¶ 12. The issue was whether the beer distributor's automobile insurance policy was the primary source of coverage for the pedestrian's injuries because it covered loading and unloading of the truck. *Id.* at 232. The court stated that opening the hatchway was "prepatory" to unloading the truck and delivering the beer kegs. *Id.* at 234. The court explained, "the opening of the trap door by the driver was properly and necessarily the actual commencement of the physical operation of unloading the beer." *Id.* The court also noted the opening of the hatchway was "an essential part of the unloading operation." *Id.*

¶ 13. Here, an examination of both Bauer's and Johnston's actions reveals that the unloading process began when Johnston raised the crane into the power lines. Bauer and Johnston took several "preparatory" steps for unloading the turbine from the truck. Bauer arrived at the destination and uncovered and unfas-

tened the turbine, so it could be lifted from the trailer. Johnston then moved his truck crane in front of Bauer's truck in anticipation of moving the turbine. Johnston next raised the crane boom to change to an attachment that would allow him to lift the turbine. Like lifting the hatchway in *Hardware Mutual,* changing the attachment was "an essential part of the unloading operation." Thus, Johnston's actions were an operation for insurance coverage purposes.

¶ 14. Great West argues, however, that because Johnston had not interacted with Bauer's truck, the unloading process had not commenced. Great West relies on Wisconsin case law that has held a party becomes a participant in the loading or unloading operation when the party "actively" or "actually" participates. *See, e.g., Continental Nat'l Ins. Co. v. Carriers Ins. Co.,* 55 Wis. 2d 533, 537, 200 N.W.2d 584 (1972). Thus, Great West contends, "Johnston's involvement with [Bauer's truck] was not 'active' or 'actual.' Mr. Johnston's activities up to the time of the accident included only interaction with the crane and its boom; nothing he did acted in any way" with the truck's cargo.

¶ 15. Looking closer at *Continental National,* we are not convinced by Great West's argument. In *Continental National,* a delivery person was delivering beef to a grocer when he fell and injured himself due to a negligently maintained unloading facility and ramp. The issue was whether the grocer was a participant in the unloading of the delivery person's vehicle, constituting use or operation for insurance coverage purposes. The court held:

> [N]o employee was present or involved with the unloading. No employee of [the grocer] used the ramp, much less the truck. It cannot be said that [the grocer]

actively engaged in the unloading operation or the use of the truck simply because they furnished the unloading ramp.

*Id.* at 540.

¶ 16. The situation in *Continental National* greatly differs from the present circumstances. Here, Johnston was actively involved in the unloading process. As previously stated, Bauer had moved his truck into a position for unloading, and he uncovered and unfastened the turbine. Johnston moved his truck crane into position to unload the truck. He then intended to make the necessary change to the attachment, so he could properly unload the turbine. In sum, Bauer and Johnston were actively taking steps to unload the turbine from Bauer's truck.

*By the Court.*–Judgment reversed and cause remanded for further proceedings.