David L. SISSON, Plaintiff,

RISK ADMINISTRATION SERVICES, INC. d/b/a Dakota Truck Underwriters, Involuntary-Plaintiff,

v.

HANSEN STORAGE COMPANY, Defendant-Third-Party Plaintiff,

ACUITY, A MUTUAL INSURANCE COMPANY, Defendant-Third-Party Plaintiff-Appellant,

v.

HARCO NATIONAL INSURANCE COMPANY, Third-Party Defendant-Respondent.

Court of Appeals

*No. 2007AP1426. Oral argument June 9, 2008.*
*—Decided June 24, 2008.*

2008 WI App 111

(Also reported in 756 N.W.2d 667.)

On behalf of the third-party plaintiff-appellant, the cause was submitted on the briefs of *Stuart R. Deardorff* and *Michelle D. Johnson* of *Simpson & Deardorff, S.C.*, Milwaukee. There was oral argument by *Stuart R. Deardorff*.

On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *Frederick J. Smith* of *Peterson, Johnson & Murray, S.C.*, Milwaukee. There was oral argument by *Frederick J. Smith*

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Acuity, A Mutual Insurance Company, appeals the circuit court's grant of summary judgment to Harco National Insurance Company dismissing Acuity's third-party complaint against Harco. Harco is K & B Transportation, Inc.'s insurer; Acuity insures Hansen Storage Company. Acuity contends that Harco provided primary coverage in connection with an accident on the premises of Acuity's insured, Hansen Storage, and caused by a Hansen employee. We affirm.

## I.

¶ 2. This appeal arises out of injuries suffered by David L. Sisson, a truck driver employed by K & B, when, during his delivery of a load of pallets to Hansen Storage in 2003, Hansen's employee, Glenn Maske, ran

into Sisson with the forklift Maske was driving. As material, Sisson unsealed his trailer, opened the trailer's doors, and backed his trailer into the Hansen Storage loading dock so Maske could use his forklift to extract the cargo. After he had removed several of the pallets from Sisson's truck, Maske noticed that some of boxes on the pallets were not what Hansen Storage had ordered. Sisson walked to where Maske had placed the pallets he had already unloaded. Maske hit Sisson with Maske's forklift as Sisson was walking to the unloaded pallets. As noted, Acuity contends that Harco's policy provides primary coverage for Sisson's injuries.

## II.

¶ 3. We review *de novo* a circuit court's grant of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). We also interpret insurance contracts *de novo. Rebernick v. Wausau Gen. Ins. Co.*, 2005 WI App 15, ¶ 5, 278 Wis. 2d 461, 466, 692 N.W.2d 348, 351, *aff'd,* 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621. We give to the language of insurance contracts its plain meaning as it would be understood by a reasonable insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). Contract language is ambiguous when it is "fairly susceptible to more than one construction." *Ibid.* Absent an ambiguity, we interpret all contracts as the language dictates. *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 9, 266 Wis. 2d 124, 134, 667 N.W.2d 751, 755. Additionally, as we will see, this appeal also implicates provisions of the Wisconsin statutes, and our interpretation and application of statutes is also *de novo. State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d

488, 490. Unless there is an ambiguity or constitutional infirmity, we apply statutes as they are written. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124.

¶ 4. As we have seen, Acuity contends that Harco provides primary coverage for Sisson's injuries. Harco, however, points to two provisions in its policy that it argues exclude such coverage. First, the policy excludes coverage for: " 'Bodily injury' to: **a.** An 'employee' of the 'insured' arising out of and in the course of: **(1)** Employment by the 'insured'; or **(2)** Performing the duties related to the conduct of the 'insured's' business." (Bolding in original.) On its face, this excludes coverage for "bodily injury" to Sisson, K & B's employee. Second, the Harco policy also provides that it "does not apply to" " '[b]odily injury' . . . resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'." The definition of "auto" specifically excludes "mobile equipment," which encompasses "forklifts." On its face, this too excludes coverage for "bodily injury" to Sisson resulting from Maske's allegedly negligent driving of the Hansen Storage forklift. Acuity asserts, however, that Wis. Stat. § 194.41(1) imposes coverage notwithstanding the exclusions.

¶ 5. As material here, Wis. Stat. § 194.41(1) requires that trucking companies operating in Wisconsin have insurance that:

> provide[s] that the insurer shall be directly liable for and shall pay all damages for injuries to or for the death of persons or for injuries to or destruction of property that may be recovered against the owner or operator of

any such motor vehicles by reason of the negligent operation thereof.[1]

[1] WISCONSIN STAT. § 194.41(1) reads in full:

No permit or vehicle registration may be issued to a common motor carrier of property, contract motor carrier, or rental company, no permit or vehicle registration may remain in force to operate any motor vehicle under the authority of this chapter, and no vehicle registration may be issued or remain in force for a semitrailer unless the carrier or rental company has on file with the department and in effect an approved certificate for a policy of insurance or other written contract in such form and containing such terms and conditions as may be approved by the department issued by an insurer authorized to do a surety or automobile liability business in this state under which the insurer assumes the liability prescribed by this section with respect to the operation of such motor vehicles. The certificate or other contract is subject to the approval of the department and shall provide that the insurer shall be directly liable for and shall pay all damages for injuries to or for the death of persons or for injuries to or destruction of property that may be recovered against the owner or operator of any such motor vehicles by reason of the negligent operation thereof in such amount as the department may require. Liability may be restricted so as to be inapplicable to damage claims on account of injury to or destruction of property transported, but the department may require, and with respect to a carrier transporting a building, as defined in s. 348.27 (12m) (a) 1., shall require, a certificate or other contract protecting the owner of the property transported by carriers from loss or damage in the amount and under the conditions as the department may require. No permit or vehicle registration may be issued to a common motor carrier of passengers by any motor vehicle, or other carrier of passengers by motor bus, except those registered in accordance with s. 341.26 (2) (a) and (d), and no permit or vehicle registration may remain in force to operate any motor vehicle unless it has on file with the department a like certificate or other contract in the form and containing the terms and conditions as may be approved by the department for the payment of damages for injuries to property and injuries to or for the death of persons, including passengers, in the amounts as the department may require. This subsection does not apply to a motor carrier that is registered by another state under a single-state or unified carrier registration system consistent with the standards under, respectively, 49 USC 14504 or 49 USC 13908 and 14504a.

(Footnote added.) Although it appears that the term "negligent operation thereof" would not encompass Maske's operation of the Hansen Storage forklift, Wisconsin makes anyone loading or unloading an insured motor vehicle an "operator" of that vehicle under § 194.41(1). *Bauer v. Century Sur. Co.*, 2006 WI App 113, ¶ 10, 293 Wis. 2d 382, 388, 718 N.W.2d 163, 166 ("Wisconsin has expressly adopted the complete operation doctrine to determine which loading and unloading actions constitute an operation for insurance coverage purposes.").

¶ 6. *Bauer* recognized the broad scope of this concept:

> "Under the so-called 'complete operation' doctrine . . . the 'loading and unloading' clause covers the *entire process* involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made, and for all practical purposes, any distinction between 'unloading' and 'delivery,' and between 'loading' and 'preparatory actions,' is not considered."

*Ibid.* (ellipses and emphasis by *Bauer*; quoted source omitted). *Bauer* concerned a crane operator who was preparing to unload a turbine from the back of a flatbed truck and inadvertently hit overhead power lines injuring the truck's driver as a result of an electrical surge. *Id.*, 2006 WI App 113, ¶ 3, 293 Wis. 2d at 384, 718 N.W.2d at 164. The crane operator was deemed under

---

The statute's reference to "unified carrier registration" and the "unified carrier" federal statutes, 49 U.S.C. §§ 13908 and 14504a, were added to § 194.41(1) by 2007 Wis. Act 20, effective October 27, 2007. *See* 2007 Wis. Act 20, §§ 2928, 9400. As we explain below, this case only concerns the "single-state . . . registration system."

Wis. Stat. § 194.41(1) to be the *truck's* "operator" and, therefore, the truck's insurer was liable to the truck's driver for the crane operator's negligence. *Id.*, 2006 WI App 113, ¶¶ 13, 16, 293 Wis. 2d at 389–390, 391, 718 N.W.2d at 167.

¶ 7. *Bauer* expressly relied on *Mullenberg v. Kilgust Mechanical, Inc.*, 2000 WI 66, 235 Wis. 2d 770, 612 N.W.2d 327, which, in response to a certified question posed by the United States Court of Appeals for the Seventh Circuit pursuant to Wis. Stat. § 821.01, held that the phrase "negligent operation" in Wis. Stat. § 194.41(1) "require[d] insurers to cover loading activities of third-parties." *Mullenberg*, 2000 WI 66, ¶ 1, 235 Wis. 2d at 772, 612 N.W.2d at 328. *Mullenberg* held "that the word 'operation' in Wis. Stat. § 194.41(1) includes loading and unloading and an individual permissively unloading the vehicle is covered by the motor carrier's policy," and that any contravening policy exclusions were "invalid." *Id.*, 2000 WI 66, ¶ 3, 235 Wis. 2d at 773, 612 N.W.2d at 328–329.

¶ 8. Here, under the undisputed facts, Maske was still in the process of unloading Sisson's truck when Maske struck Sisson. Thus, if Wis. Stat. § 194.41(1) applies, Harco's policy would cover Maske's liability to Sisson despite the exclusions in Harco's policy. Harco, however, contends that § 194.41(1) does not apply, pointing to the subsection's last sentence, which as material here, reads: "This subsection does not apply to a motor carrier that is registered by another state under a single-state . . . system consistent with the standards under, respectively, 49 USC 14504." As of the date of Maske's accident with Sisson in 2003, 49 U.S.C. § 14504 authorized the establishment of a single-state motor-carrier registration system:

**(c) Single State registration system.—**

**(1) In general.**—The Secretary shall maintain standards for implementing a system under which—

**(A)** a motor carrier is required to register annually with only one State by providing evidence of its Federal registration under chapter 139;

**(B)** the State of registration shall fully comply with standards prescribed under this section; and

**(C)** such single State registration shall be deemed to satisfy the registration requirements of all other States.[2]

(Footnote added.)

¶ 9. In support of its contention that the last sentence of WIS. STAT. § 194.41(1) makes that subsection inapplicable, Harco asserts that on the date of the Maske/Sisson accident K & B was registered in Iowa under a single-state registration system. In an affidavit dated November 12, 2007, attached to Harco's respondent's brief on this appeal, Michael S. Ratkiewicz, who identifies himself as "the Executive Vice President with K & B Transportation, Inc.," avers that K & B "has been registered by Iowa under the Interstate Commerce Commission and Federal Motor Carrier Safety Administration's Single-State Registration System since at least the mid-1990s through the current year." (Parenthetical acronyms omitted.) In support of this averment, Ratkiewicz attached to his affidavit documents he asserts "were filed with the Iowa Department of Transportation Office of Motor Carrier

---

[2] 49 U.S.C. § 14504 was repealed effective January 1, 2008, by Pub. L. No. 109–59, 119 Stat. 1764, as amended by Pub. L. No. 110–53, 121 Stat. 467, and was replaced by the Unified Carrier Registration System. 49 U.S.C. § 13908(a)(1); *see also* 49 U.S.C. § 14504a(a)(7).

Services" in connection with K & B's single-state registration "for the year 2003." Although this material was not presented to the circuit court, Harco asks, on our *de novo* review of the circuit court's grant of summary judgment to it, that we take judicial notice of K & B's single-state registration for 2003, and thus the inapplicability of § 194.41(1).

¶ 10. Whether in 2003 K & B was registered in Iowa under the single-state registration system is an adjudicative fact.[3] Judicial notice of adjudicative facts is governed by WIS. STAT. RULE 902.01:

(1) SCOPE. This section governs only judicial notice of adjudicative facts.

(2) KINDS OF FACTS. A judicially noticed fact must be one not subject to reasonable dispute in that it is any of the following:

---

[3] The Federal Advisory Committee's Note to Federal Rule of Evidence 201, upon which WIS. STAT. RULE 902.01 was patterned without substantive change, explained the difference between "adjudicative facts" and "legislative facts":

Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.

Reprinted at WIS. R. EVID. 59 Wis. 2d R26–R27. The Federal Advisory Committee further explains:

The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite.

Reprinted at WIS. R. EVID. 59 Wis. 2d R27.

(a) A fact generally known within the territorial jurisdiction of the trial court.

(b) A fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(3) WHEN DISCRETIONARY. A judge or court may take judicial notice, whether requested or not.

(4) WHEN MANDATORY. A judge or court shall take judicial notice if requested by a party and supplied with the necessary information.

(5) OPPORTUNITY TO BE HEARD. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(6) TIME OF TAKING NOTICE. Judicial notice may be taken at any stage of the proceeding.

(7) INSTRUCTING JURY. The judge shall instruct the jury to accept as established any facts judicially noticed.

¶ 11. As we see, "[j]udicial notice may be taken at any stage of the proceeding," WIS. STAT. RULE 902.01(6), and this means that an appellate court may take judicial notice when that is appropriate, *Massachusetts v. Westcott*, 431 U.S. 322, 323 n.2 (1977) (per curiam); *Sengstock v. San Carlos Apache Tribe*, 165 Wis. 2d 86, 95, 477 N.W.2d 310, 314 (Ct. App. 1991). Further, a court must take judicial notice when, as material here: (1) the fact for which judicial notice is requested is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"; and (2) a party asks the court to take

judicial notice and gives the court "the necessary information."[4] Rᴜʟᴇ 902.01(2)(b) & (4). We may take judicial notice of matters of record in government files. *Westcott*, 431 U.S. at 323 n.2 (taking judicial notice of a vessel's licensure "ascertained from the records of the Merchant Vessel Documentation Division of the Coast Guard").

¶ 12. As we have seen, the affidavit submitted to us by the K & B executive has given us information that he represents was "filed with the Iowa Department of Transportation Office of Motor Carrier Services" in connection with K & B's single-state registration "for the year 2003." The attached documents thus pass initial authentication muster under Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 909.01 ("The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). *See also* Wɪs. Sᴛᴀᴛ. Rᴜʟᴇs 909.015(1) (Authentication may be proven by the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be."); 909.015(7) (Authentication may be proven by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data

---

[4] *Wildman v. State*, 69 Wis. 2d 610, 230 N.W.2d 809 (1975), upon which Acuity relies in its reply brief is inapplicable. In *Wildman*, a defendant convicted of cruelty to animals, *id.*, 69 Wis. 2d at 611–612, 230 N.W.2d at 810–811, asked the supreme court to take "judicial notice" of disputable scientific arcana of infectious cattle diseases, *id.*, 69 Wis. 2d at 614, 230 N.W.2d at 812. Here, as we discuss below, Acuity does not challenge the truthfulness of the adjudicative fact of which Harco asks us to take judicial notice.

425

compilation, in any form, is from the public office where items of this nature are kept."); *State v. Smith*, 2005 WI 104, ¶ 31, 283 Wis. 2d 57, 77, 699 N.W.2d 508, 518 (discussing RULES 909.015(1) and 909.015(7)).

¶ 13. A party against whom the taking of judicial notice is sought must, of course, have a chance to object as to whether the matters are capable of indisputable proof and, therefore, subject to the taking of judicial notice. WIS. STAT. RULE 902.01(5); *see also Ohio Bell Tel. Co. v. Public Util. Comm'n of Ohio*, 301 U.S. 292, 302 (1937) (The opponent to the taking of judicial notice may object "by evidence if he believes it disputable."). Here, Acuity has had a chance to respond to the affidavit and attachments submitted to us by the K & B executive as an appendix to Harco's respondent's brief. Other than an unsupported assertion that "[t]he accuracy of [the K & B executive's] Affidavit and the attached documents can be questioned," Acuity's reply brief neither disputes the truth of the K & B executive's affidavit or the attachments nor asks for additional time to investigate whether to do so. Under the traditional summary judgment methodology (and, again, our review of summary judgment is *de novo*), a party objecting to the grant of summary judgment must either submit evidentiary material showing that there are disputes that need to be tried or, at the very least, ask for additional time to investigate. *See* WIS. STAT. RULES 802.08(3) ("When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be

entered against such party."); 802.08(4) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). By not showing by evidence or an offer of proof that the matters in the K & B executive's affidavit are "disputable," Acuity has, in effect, admitted that those matters are true. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (matter not refuted deemed admitted). Indeed, at oral argument, Acuity's counsel conceded that Acuity cannot dispute the material submitted by the K & B executive's affidavit. Accordingly, WIS. STAT. § 194.41(1) does not apply here.

¶ 14. Acuity also asserts that Wisconsin's omnibus insurance statute, WIS. STAT. § 632.32, overrides the Harco exclusions. A precondition to the application of § 632.32 is, however, that the insurance policy be "issued or delivered in this state." Sec. 632.32(1) ("Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person."). Acuity does not dispute that the Harco policy was neither issued nor delivered in Wisconsin. Accordingly, § 632.32 does not apply.

¶ 15. Finally, Acuity contends that because Harco rejected a May 19, 2006, tender of defense by Hansen Storage (Acuity's insured), Harco waived its right to

427

contest coverage, even though, as we have seen, the Harco policy was issued to K & B and does not provide coverage to Hansen Storage, either under the policy terms or under the applicable law. Significantly, the "tender of defense" made by Hansen Storage sought coverage for Hansen "as an additional insured under Wisconsin law" and not because Hansen Storage had contracted with Harco by taking out the policy and paying the premiums. Moreover, Hansen Storage (as apart from Acuity) has not appealed the circuit court's grant of summary judgment to Harco.

¶ 16. Although it is risky for an insurance carrier to reject a tender of defense by its insured, the justified rejection of a tender does not create coverage where none exists, unless the claims stated in the complaint against the insured "arguably falls within the policy coverage." *Southeast Wisconsin Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc.*, 2007 WI App 185, ¶ 42, 304 Wis. 2d 637, 676, 738 N.W.2d 87, 107:

> The duty to defend exists if any one claim arguably falls within the policy coverage. The coverage need only be arguable or fairly debatable. An insurance company that disputes coverage, and thus the duty to defend, has several choices. The company may enter into a non-waiver agreement with the insured wherein the insurer would agree to defend and the insured would acknowledge the right of the insurer to contest coverage. The company may seek to bifurcate the trial and obtain a declaratory judgment on coverage in advance of the determination of liability. The company may defend the insured under a reservation of rights, that is reserving its right not to pay a judgment if it is determined that coverage does not exist. Or, the company may decline to defend and risk the consequences.

(Citations omitted.) *See also Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 45, 577 N.W.2d 366, 370 (Ct. App. 1998) ("Where an insurer improperly refuses to defend, it will be held to have waived any subsequent right to litigate coverage."). But, and this is significant, the reason for the rule is to prevent insurance companies from playing fast and loose with their insureds:

> The nature and language of the insurance contract contemplate that the insurer will provide indemnification and defense for claims described in the policy in exchange for periodic premium payments. Under the terms of the policy, the insured's liability to the insurer is limited to the payment of the premium. When the insurer declines to provide insurance coverage thereby forcing the insured to litigate the issue of coverage for a claim that is alleged to fall under the insurance policy, the insured is deprived of the benefit that was bargained for and paid for with the periodic premium payments. We hold that sec. 806.04(8), Stats. [The Uniform Declaratory Judgments Act], which recognizes the principles of equity, permits the recovery of reasonable attorney fees incurred by the insured in successfully establishing coverage.

*Elliott v. Donahue*, 169 Wis. 2d 310, 314, 485 N.W.2d 403, 404 (1992). Here, of course, K & B, not Hansen Storage, paid Harco's premiums.

¶ 17. Further, a determination whether an insurance company has breached its duty to its insured by not defending the insured is made solely on the allegations of the complaint: "In Wisconsin, the duty of an insurer to provide a defense to its insured is determined by the complaint and not by extrinsic evidence. If there are allegations in the complaint which, if proven, would be covered, the insurer has a duty to defend." *Grube v.*

*Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992) (citations omitted). Here, Sisson's complaint against Hansen Storage and its insurer Acuity seeking recovery for injuries caused by the Hansen Storage employee Maske was filed on April 25, 2006, and has the following substantive allegations:

- "On or about April 30, 2003, at the facility of Hansen Storage Company, located at 2880 N. 112th Street, Wauwatosa, Wisconsin, while in the course and scope of his employment, a forklift driver and employee of Hansen Storage Company negligently operated the forklift he was driving so as to cause it to collide with plaintiff David L. Sisson, who was walking nearby in a lawful, safe, and reasonable manner."

- Sisson was "seriously injured" as a result.

Thus, looking at the complaint, which does not even allege that the forklift driver and Sisson were in the process of unloading Sisson's truck, and not at any extrinsic evidence, *see id.*, there is nothing in the complaint that even sets out an arguable or debatable duty by Harco to defend Hansen Storage. As we explained in *Production Stamping Corp. v. Maryland Casualty Co.*, 199 Wis. 2d 322, 331 n.4, 544 N.W.2d 584, 588 n.4 (Ct. App. 1996), an ultimate judicial determination that there is no coverage and that under the complaint "coverage [was] not even fairly debatable" vindicates a carrier's decision to reject a tender. Harco did not waive its right to contest coverage.

*By the Court.*—Order affirmed.