COURT OF APPEALS
DECISION
DATED AND FILED

February 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2024AP1390**

Cir. Ct. No.  **2023ME178**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF R.D.T.:

WAUKESHA COUNTY,

    PETITIONER-RESPONDENT,

  V.

R.D.T.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Waukesha County: CODY J. HORLACHER, Judge. *Dismissed*.

¶1      GROGAN, J.[1]   R.D.T., referred to herein by the pseudonym "Rex," appeals from a WIS. STAT. ch. 51 extension of his commitment and a concomitant involuntary medication order.[2]   Both orders were entered following a hearing in September 2023.   Rex contends that the circuit court failed to make specific factual findings on dangerousness and the County failed to introduce any admissible evidence that could result in a determination that he is dangerous.   He also asserts that his appeal is not moot because even though he was subject to multiple (continuous) commitments before this one and is subject to a commitment that followed this one,[3] collateral consequences "preclude dismissal for mootness."   This court concludes this appeal is moot and dismisses it.

## I. BACKGROUND

¶2      Rex has been diagnosed with schizoaffective disorder, bipolar type. He was initially committed in October 2021 in Jefferson County because he had a qualifying mental illness, the illness was treatable, and he was dangerous based on "a substantial probability of [causing] harm to [him]self and others[.]"   Rex did not contest the initial commitment.   He was recommitted in Jefferson County

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  "Recommitment" is synonymous with "extension of commitment," and the terms will therefore be used interchangeably.  *See Sheboygan County v. M.W.*, 2022 WI 40, ¶6 n.3, 402 Wis. 2d 1, 974 N.W.2d 733.

[3]  Although the 2024 extension of commitment order is not in the Record, it is a court document of which this court may—and does—take judicial notice.  *See, e.g.*, WIS. STAT. § 902.02(1), (6) (courts may take "judicial notice of adjudicative facts" "at any stage of the proceeding"); *Sisson v. Hansen Storage Co.*, 2008 WI App 111, ¶¶10-11, 313 Wis. 2d 411, 756 N.W.2d 667 ("an appellate court may take judicial notice when that is appropriate").

again in April 2022 and April 2023.  In May 2023, venue was changed to Waukesha County.

¶3      On September 12, 2023, the Waukesha County WIS. STAT. § 51.42 Board (the Board) petitioned the circuit court, seeking to recommit Rex, asserting that:

> Additional time is needed to treat [Rex] under commitment given his lack of insight into his disorder and need for treatment and his history of stopping medications and decompensating when not under a court order.  Give[n] [Rex's] recent increase in manic symptoms, additional time is need[ed] to adjust [Rex's] medications and bring him back to his psychiatric baseline as well as to get him back in his recommended therapy to address his ongoing substance use and mental health concerns.

The petition summarized Rex's condition, his mental health diagnosis, his treatment history, his prior hospitalizations, his symptomology, and dangerousness.  It also recounted Rex's treating doctor's concerns about Rex's denial of his mental illness, Rex's desire to get off all medications, and indicated that Rex would decompensate without the medications.

¶4      The circuit court appointed two doctors to examine Rex: Dr. Charles Rainey and Dr. Peder Piering.  Both submitted reports to the court. Dr. Piering indicated he was unable to make contact with Rex and so did not personally examine him; however, he concluded that Rex met the criteria for recommitment under WIS. STAT. § 51.20(1)(am), marking the first, second, and third dangerousness standards.[4]  Dr. Rainey's report indicated he attempted to

---

[4] *See* WIS. STAT. § 51.20(1)(a)2.a-c.

contact Rex, but was unsuccessful.[5]   Based on his review of Rex's treatment history and communication with others, he concluded that Rex met the criteria for recommitment under WIS. STAT. § 51.20(1)(am) tied to the third dangerousness standard, WIS. STAT. § 51.20(1)(a)2.c.

¶5      At the September 26, 2023 recommitment hearing, only licensed clinical social worker Danielle Weber and Dr. Rainey testified.  Weber testified or confirmed during her testimony that she:  (1) is able to treat mental illness but cannot prescribe medication; (2) is part of the Board, which has been responsible for "monitoring treatment and compliance of [Rex's] order" since venue was transferred to Waukesha County; (3) prepared the "extension of commitment report" that was filed with the circuit court; (4) was present for several of the treating doctor's assessments of Rex; and (5) consults with his treating doctor. She also testified that Rex is currently diagnosed with schizoaffective disorder, is on antipsychotic medication, and that the Board was requesting an order requiring he remain on an antipsychotic medication.  She also discussed Rex's treatment and commitment history and explained that Rex does not believe he has a mental illness, that he has a history of stopping oral medications, and that without medication, Rex would "decompensate in the community," lose his housing, lose his job, and would require "inpatient hospitalization."  She further testified there would be "concerns for [the] public and his safety" if he goes off his medication. Rex did not object to any of the questions or answers during Weber's testimony.

---

[5] Rex did eventually contact Dr. Rainey, explaining he had been too busy to respond to the doctor's call before; however, Dr. Rainey explained to Rex that it was too late for an examination because of the report deadline set by the circuit court.

¶6     Dr. Rainey testified or confirmed during his testimony that: (1) he is a forensic psychiatrist "licensed to practice medicine in" Wisconsin; (2) he has done over 5,000 psychiatric evaluations since 2000, most related to ch. 51 commitments; (3) after reviewing the records/reports reasonably relied upon for these evaluations, he concluded that Rex has a treatable mental illness ("schizoaffective disorder, bipolar type") that affects his thoughts and moods and grossly impairs his "judgment and behavior"; (4) Rex has delusions and is incapable of making an informed choice on medication and treatment; and (5) absent a commitment requiring medication, Rex's symptoms would worsen and he would "become physically aggressive toward others[.]"  Rex did not object during Dr. Rainey's testimony.

¶7     Rex did object, however, to the admission of Weber's and Dr. Rainey's reports, but only to the extent that they contained otherwise inadmissible hearsay.  Both Dr. Rainey's report and Weber's report were admitted into evidence.[6]  At the conclusion of the evidence, the circuit court found the County had proven the elements needed for recommitment.  It entered an order committing Rex for another twelve months, and it entered a concomitant order for involuntary medication for the same time period.  Rex appeals from the now-expired September 2023 orders.

## II. DISCUSSION

¶8     Rex seeks to vacate the September 2023 commitment orders because he asserts the circuit court failed to comply with the requirement set forth in

---

[6] Dr. Piering's report was not admitted into evidence and therefore could not be relied on in determining whether Rex should be recommitted.

*Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277, that "circuit courts in recommitment proceedings … make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2 on which the recommitment is based." He argues the court did not make specific factual findings on dangerousness and that the County's only evidence showing dangerousness was inadmissible hearsay.[7] This court need not address the merits of Rex's appeal because the orders appealed from are moot as a result of the subsequent recommitment order entered in 2024.

¶9     "An issue is moot when its resolution will have no practical effect on the underlying controversy." *Portage County v. J.W.K.*, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (quoted source omitted); *see also* *Fort Howard Paper Co. v. Fort Howard Corp.*, 273 Wis. 356, 360, 77 N.W.2d 733 (1956) (a case may be moot if the case seeks "'a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy'" (citation omitted)). "Appellate courts generally decline to reach the merits of an issue that has become moot." *PRN Assocs. LLC v. DOA*, 2009 WI

---

[7] To involuntarily commit an individual, a county must establish by clear and convincing evidence that the person is mentally ill, a proper subject for treatment, and dangerous. WISCONSIN STAT. § 51.20(1)(a)1-2, (13)(e), (13)(g)3; *Waukesha County v. J.W.J.*, 2017 WI 57, ¶18, 375 Wis. 2d 542, 895 N.W.2d 783. "To prevail in a recommitment proceeding, the petitioner must demonstrate the same three elements necessary for the initial commitment[,]" but "'§ 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of'" commitment immediately before the recommitment petition. *Sheboygan County v. M.W.*, 2022 WI 40, ¶¶18-19, 402 Wis. 2d 1, 974 N.W.2d 733 (quoting *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509). Dangerousness "'may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.'" *M.W.*, 402 Wis. 2d 1, ¶20 (quoting § 51.20(1)(am)). Rex does not challenge the circuit court findings that he has a qualifying mental illness and is a proper subject for treatment. He focuses solely on the dangerousness element.

53, ¶29, 317 Wis. 2d 656, 766 N.W.2d 559. Mootness is a question of law this court reviews de novo. *Id.*, ¶25.

¶10      In *Sauk County v. S.A.M.*, the supreme court held that appeals from expired commitment or recommitment orders may not be moot if "ongoing collateral consequences causally related to [the expired recommitment order] could be practically affected by a favorable decision[.]" 2022 WI 46, ¶¶24-27, 37, 402 Wis. 2d 379, 975 N.W.2d 162. This court is not convinced that any collateral consequences meet that standard.

¶11      It is undisputed that the September 2023 recommitment orders have expired and that Rex is now subject to 2024 recommitment orders. The challenges he makes to his September 2023 recommitment orders will therefore have no practical legal effect on his case, and the collateral consequences he proffers will not have any practical effect even if this court vacated the orders appealed.

¶12      Rex, citing *Marathon County v. D.K.*, 2020 WI 8, ¶23, 390 Wis. 2d 50, 937 N.W.2d 901, contends several collateral consequences have outlasted the expired orders. Specifically, he believes the September 2023 expired orders result in the following collateral consequences: (1) stigma; (2) the use of those records in subsequent legal proceedings; (3) the potential that the County may seek reimbursement from him for costs of his treatment pursuant to WIS. STAT. § 46.10(2); and (4) a firearms ban.

¶13      This court disagrees. First, stigma is an illusory consequence here because Rex had multiple commitment orders prior to September 2023 and he was recommitted in 2024. Second, this court is also not persuaded that use of the September 2023 records in subsequent proceedings is a collateral consequence sufficient to address the merits on expired orders when Rex had previous

commitment orders and is currently subject to the 2024 orders. Each commitment extension requires re-examination and new reports. Third, as for being liable for costs related to the September 2023 orders, there is no indication that the County is seeking such reimbursement, and without some likelihood of that occurring, this too is an illusory consequence. Last, with respect to the firearms ban, he continues to be subject to the ban based on the 2024 order, and therefore vacating the September 2023 order would not have any practical impact. Accordingly, this court sees no valid collateral consequences with respect to the expired orders at issue in this appeal.

¶14 Finally, Rex argues that even if this court concludes his appeal is moot, it should nevertheless address the merits of his appeal based on mootness exceptions, which include: (1) where "the issues are of great public importance;" (2) when "the constitutionality of a statute is involved;" (3) when "the situation arises so often 'a definitive decision is essential to guide the trial courts;'" (4) where "the issue is likely to arise again and should be resolved by the court to avoid uncertainty;" and (5) where "the issue is 'capable and likely of repetition and yet evades review.'" *J.W.K.*, 386 Wis. 2d 672, ¶12 (quoted source omitted). This court is unconvinced that any of the mootness exceptions apply and therefore will not address the merits.

¶15 Moreover, any alleged errors that occurred during Rex's September 2023 hearings are harmless. The governing statute directs that courts are to "disregard any error or defect ... that does not affect the substantial rights of either party." WIS. STAT. § 51.20(10)(c). An error is harmless unless there is a "reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698. "A reasonable possibility of a different outcome is a possibility

sufficient to 'undermine confidence in the outcome.'" ***Id.*** (citation omitted). This court sees no reason to lack confidence in the outcome of the September 2023 recommitment hearing.

¶16     The County alleged an extension of Rex's commitment was necessary under WIS. STAT. § 51.20(1)(am), based on the third dangerousness standard, because withdrawing treatment would cause Rex to deteriorate and, as Dr. Rainey testified, "become physically aggressive towards others," thereby rendering him a proper subject for treatment. There was no doubt which dangerousness standard was involved. The undisputed testimony at the hearing established that when Rex stops taking his medication, he becomes dangerous. Testimony also demonstrated that the only way to ensure he stays on his medication is with a commitment order.

*By the Court.*—Orders dismissed.[8]

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] The County moved this court to convert this appeal to be heard by a three-judge panel, pursuant to WIS. STAT. § 752.31(3) and WIS. STAT. RULE 809.41(1). Based on this court's disposition, that motion is denied.